JOHN M. HODGES, PLAINTIFF v. EQUITY GROUP, DEFENDANT, SEDGWICK CMS, SERVICING AGENT

No. COA03-930

(Filed 18 May 2004)

**1. Workers' Compensation— cause of fall at work—inferred—injury compensable**

Even though a workers' compensation plaintiff could not explain the cause of his fall, an inference that the fall had its origin in his employment is permitted and the Industrial Commission properly found and concluded that plaintiff's injuries were compensable, work-related, and arose out of his employment.

**2. Workers' Compensation— findings—injury arising out of employment**

The Industrial Commission's findings in a workers' compensation case sufficiently indicated that plaintiff's injuries arose out of his employment where it found that he fell as he approached a piece of machinery.

**3. Workers' Compensation— company doctor—ex parte communications**

There was competent evidence in a workers' compensation case to support a finding that a company doctor had engaged in ex parte communications at defendant employer's request

when he contacted plaintiff's other doctors about plaintiff's ability to work.

### 4. Workers' Compensation— credibility of witness—Commission as sole judge

The Industrial Commission is the sole judge of the credibility and weight of the evidence and testimony before it, and the contention that the Commission should have denied a workers' compensation claim because plaintiff was not a credible witness was without merit.

### 5. Workers' Compensation— attorney fees—findings

The award of attorney fees in a workers' compensation case under N.C.G.S. § 97-88 (expenses of appeals brought by insurers) was remanded for additional findings where the Commission did not make findings regarding the costs associated with defendants' appeal of the deputy commissioner's opinion and award.

### 6. Workers' Compensation— attorney fees—denied

The Industrial Commission did not abuse its discretion by deciding against an award of attorney fees under N.C.G.S. § 97-88.1 where defendant employer initially defended upon unfounded allegations of fraud but also defended reasonably upon the basis of causation.

Appeal by defendants from opinion and award entered 26 March 2003 by the Industrial Commission. Heard in the Court of Appeals 27 April 2004.

*McAngus, Goudelock & Courie, P.L.L.C., by John T. Jeffries, for defendants.*

*Anne R. Harris for plaintiff.*

WYNN, Judge.

From the Industrial Commission's award in favor of Plaintiff-employee John M. Hodges, Defendants Equity Group and Sedgwick-CMS argue on appeal that: (I) Plaintiff's fall neither related to nor arose out of his employment; (II) the Commission erroneously based its findings of fact and conclusions of law upon incredible evidence; (III) the Commission's findings of fact regarding Dr. Guarino's *ex parte* communication were unsupported by evidence and (IV) attorney's fees pursuant to N.C. Gen. Stat. § 97-88 were inappropriate. By

cross-appeal, Plaintiff contends an award of attorney's fees pursuant to N.C. Gen. Stat. § 97-88.1 was appropriate in this matter. We conclude the Commission's findings of fact and conclusions of law regarding the compensability of Plaintiff's claim were supported by competent evidence and the applicable law. We further hold that the Commission's award of attorney's fees under N.C. Gen. Stat. § 97-88 was unsupported by appropriate findings of fact, and uphold the Commission's decision to not award attorney's fees under N.C. Gen. Stat. § 97-88.1. Accordingly, we remand to the Commission for entry of findings of fact to support the award of attorney's fees under N.C. Gen. Stat. § 97-88.

The record shows that Plaintiff fell at work on 16 April 2001. On this date, Plaintiff, a mechanic at Equity Group, worked overtime as the factory was closed for the Easter holidays. He had volunteered to work the second shift, from 2:30 to 11:00 p.m., and was in the process of preparing the machines for the manufacture of a new product the next day.

At the beginning of his shift, Plaintiff worked in the maintenance shop fixing machine guards, which prevent the lines from hooking together and breaking. After he had prepared one of the guards, he decided to install it on a machine to make sure it worked properly. He left the maintenance shop, started onto the factory floor, and as he turned a corner, his "feet came out from under him" and he landed on his right hip and back. As he was gathering himself, his co-worker asked him if he was okay. Although Plaintiff testified he felt pain after the fall, he "shrugged it off" and kept working. No supervisor was on duty that evening and only one other person was working.

The next morning he felt stiffness in his hip and numbness in his leg. Upon arriving to work, he reported the injury to one of his supervisors who directed Plaintiff's immediate supervisor to fill out an accident report. He worked his entire shift that day. The next day, Wednesday, the pain had worsened. He talked with his immediate supervisor and another individual about seeing a doctor. An accident report was filled out and human resources scheduled an appointment with Dr. Joseph Guarino.

Dr. Guarino examined Plaintiff and indicated his back and hip was bruised. He prescribed an anti-inflammatory drug and ordered Plaintiff to work on light-duty tasks. No pain medication was prescribed. The following Sunday, Plaintiff went to the emergency department at Morehead Hospital because he was hurting badly. After

indicating he had slipped and fallen at work, the hospital prescribed some pain medication and ordered light-duty work. The next Tuesday, Plaintiff returned home from work and was unable to get out of his car due to the pain. Plaintiff's wife drove him to the emergency room at Martinsville Memorial Hospital. The emergency room doctors scheduled an MRI for the following Saturday and ordered three days leave from work. The MRI revealed Plaintiff had a ruptured disc in his back. The next Monday, Plaintiff saw Dr. Guarino who opined the disc herniation was not causing Plaintiff's pain because the disc herniation was on the left side and the pain was in Plaintiff's right leg and hip. Dr. Guarino told Plaintiff to return to work and he would try to obtain authorization for physical therapy. Thereafter, Plaintiff sought treatment with his family physician, Dr. M. Edward Eller, who told Plaintiff not to return to work and to see Dr. James M. Vasick, a neurosurgeon.

Dr. Vasick had operated on Plaintiff's back in 1998 in the same location as the current rupture. Plaintiff had a 100% recovery from the 1998 surgery. After reviewing Plaintiff's present condition, Dr. Vasick gave Plaintiff a range of treatment options. As Plaintiff had a successful surgery in 1998, he opted for surgery. In May and June 2001, Plaintiff underwent two surgeries to correct the disc herniation. Although the back pain subsided after the surgery, Plaintiff still experienced pain in his right hip and leg.

At the time of the hearing, Plaintiff used a cane, participated in limited exercise and daily activities and was on Social Security disability. He had been terminated from his employment with Equity Group in August 2001 and was not presently working. Dr. Vasick opined Plaintiff could not work and would need further treatment in the future. The Commission found and concluded Plaintiff sustained a compensable injury by accident as a result of his fall and suffered a disc herniation. He was awarded temporary total disability compensation. Defendants appeal.

[1] Defendants first argue that because Plaintiff's "legs went out from under him" the risk of a resulting fall was not a hazard related to or arising out of Plaintiff's employment. We disagree.

"To be compensable under the Workmen's Compensation Act an injury must result from an accident arising out of and in the course of the employment." *Taylor v. Twin City Club*, 260 N.C. 435, 437, 132 S.E.2d 865, 867 (1963). "With respect to back injuries, however, where

injury to the back arises out of and in the course of the employment and is the direct result of a specific traumatic incident of the work assigned, 'injury by accident' shall be construed to include any disabling physical injury to the back arising out of and causally related to such incident." N.C. Gen. Stat. § 97-2(6) (2003). The "claimant has the burden of showing such injury." *Taylor*, 260 N.C. at 437, 132 S.E.2d at 867.

Defendants concede in their brief that:

there is no question as to whether Plaintiff-Appellee's fall occurred in the course of his employment given that he was at work during working hours. Moreover, the fall was an unusual and unforeseen occurrence.

However, Defendants argue, Plaintiff failed to prove the fall arose out of his employment and the Commission failed to make any findings on the issue.

"Where any reasonable relationship to the employment exists, or employment is a contributory cause, the court is justified in upholding the award as 'arising out of employment.' " *Janney v. J.W. Jones Lumber Co., Inc.*, 145 N.C. App. 402, 404, 550 S.E.2d 543, 545-46 (2001). "An accident has a reasonable relationship to the employment when it is the result of a risk or hazard incident to the employment. When the employee's idiopathic condition is the sole cause of the injury, the injury does not arise out of the employment. The injury does arise out of the employment if the idiopathic condition of the employee combines with 'risks attributable to the employment' to cause the injury." *Id.* An idiopathic condition is "one arising spontaneously from the mental or physical condition of the particular employee." *Calhoun v. Kimbrell's Inc.*, 6 N.C. App. 386, 391, 170 S.E.2d 177, 180 (1969). "The question of whether an injury 'arises out of employment' is a mixed question of law and fact and our review is limited to whether the findings and conclusions are supported by competent evidence." *Janney*, 145 N.C. App. at 404, 550 S.E.2d at 546.

Defendants contend that because Plaintiff could not explain the circumstances surrounding his fall and because an idiopathic condition could have caused Plaintiff's fall, his injury did not arise out of his employment. Indeed, Plaintiff testified he did not stumble or trip, there were no obstructions in his way, and he did not believe he slipped. He indicated his "feet just came out from under him."

Our case law explains that where the facts indicate that at the time of an accident, an employee "was within his orbit of duty on the business premises of the employer, [and] was engaged in the duties of his employment or some activity incident thereto, was exposed to the risks inherent in his work environment and related to his employment, and the only active force involved was the employee's exertions in the performance of his duties," an "inference that the fall had its origin in the employment" is permitted. *Slizewski v. International Seafood, Inc.*, 46 N.C. App. 228, 232-33, 264 S.E.2d 810, 813 (1980).

In this case, Plaintiff fell when he was walking to a machine in order to install a guard. Although the factory was closed for the Easter holiday, plant management had asked for volunteers to work overtime on this particular day and had left a list of jobs to complete during the shift. Even though Plaintiff can not explain what caused him to fall, as stated in *Slizewski*, an inference that the fall had its origin in employment is permitted in this case because "the only active force involved was the employee's exertions in the performance of his duties." *Id.*

Defendants contend, however, that Plaintiff's fall was solely caused by an idiopathic condition—either the onset of his disc herniation or problems with his diabetes and high blood pressure. This contention is unsupported by the record. Dr. James M. Vasick, Plaintiff's neurosurgeon, was asked:

Based upon what you said, that a disc can occur in the absence of trauma, if a disc had occurred in the absence of trauma, could one of the problems that would occur be that a person's feet just might come out from under them for no reason that we can deduce.

Dr. Vasick responded "I can't say no, but I think that it would be unusual." He further explained, "I think that it would be highly unusual that his disc rupture would have occurred just as he was falling, and I don't think that he fell because he had a new disc rupture" based upon Plaintiff's reports of the pain beginning after the fall and not before. He also opined to a reasonable degree of medical certainty that the April 2001 injury was the cause of his current disability. As for Plaintiff's diabetes and high blood pressure, Dr. M. Edward Eller, Plaintiff's family physician, testified Plaintiff's blood pressure and diabetes was under control in May 2001, shortly after the injury. Accordingly, the Commission properly found and concluded

Plaintiff's back injury and hip and leg pain were compensable work-related injuries arising out of his employment.

[2] Defendants also argue the Commission's findings of fact do not sufficiently indicate Plaintiff's injuries arose out of his employment. In Finding of Fact 2, the Commission stated:

> On April 16, 2001, the plaintiff was working overtime as the plant was closed over Easter. As the plaintiff was approaching a piece of machinery on which he was going to place a guard, the plaintiff's feet went out from under him and he fell. The plaintiff did not recall any slippery substances or obstructions on the floor. The plaintiff landed on his right side and back. The plaintiff felt immediate pain when he fell but "shook it off" and continued to work.

In this finding, the Commission specifically stated that as Plaintiff was approaching a piece of machinery on which he was going to place a guard, Plaintiff fell. Based upon this finding, the Commission could conclude Plaintiff's fall and resulting injuries had a reasonable relationship to his employment thereby justifying the conclusion that the incident and injuries arose out of Plaintiff's employment. Moreover, this finding of fact is supported by competent evidence. Plaintiff testified that after he finished repairing one of the guards in the maintenance shop, he decided to try it out on one of the machines. As he was walking towards the machine, Plaintiff fell. Accordingly, we conclude the Commission's findings of fact were adequate.

[3] Defendants also contend the Commission's finding of fact that Dr. Guarino engaged in ex-parte communication at the request of Defendants is unsupported by competent evidence. We disagree.

> In Finding of Fact 12, the Commission found:

> Dr. Guarino, at defendant-employer's request, as the company doctor for defendant-employer initiated *ex parte* communications with other physicians who had written the plaintiff out of work. The purpose of these communications was to convince the plaintiff's physicians to change the plaintiff's work restrictions and allow him to work. The plaintiff was not made aware of these communications and certainly did not authorize them.

Dr. Guarino and Laura Hale, Equity Group's Human Resources Manager, testified that Dr. Guarino was Equity Group's company doc-

tor. Ms. Hale testified that she contacted Dr. Guarino and asked him to contact other physicians regarding Plaintiff's ability to work. As explained by Dr. Guarino, he was asked to help Equity Group establish a consensus among all of the doctors regarding Plaintiff's ability to work and he asked Dr. Eller to rescind his recommendation that Plaintiff refrain from working. Dr. Guarino also contacted the Martinsville Hospital emergency room physicians and, pursuant to Ms. Hale's request, informed the doctors that modified work was available for Plaintiff and asked whether they would allow him to go back to work on modified duty restrictions. He testified that Plaintiff was unaware of his contacts with other physicians and did not ask for Plaintiff's consent to make these contacts. This testimony constitutes competent evidence supporting Finding of Fact 12.

[4] Defendants next contend the Commission should have denied Plaintiff's claim because he was not a credible witness. As indicated by our Supreme Court, however, the Commission is "the sole judge of the credibility and weight to be accorded to the evidence and testimony before it." *Click v. Pilot Freight Carriers, Inc.*, 300 N.C. 164, 166, 265 S.E.2d 389, 390 (1980). Accordingly, we conclude this assignment of error is without merit.

[5] Finally, Defendants contend the Commission abused its discretion in awarding Plaintiff's attorney's fees pursuant to N.C. Gen. Stat. § 97-88 (2001). Specifically, Defendants argue the Commission failed to render findings of fact supporting the award and that the Commission does not have discretionary authority under N.C. Gen. Stat. § 97-88 to award attorney's fees without inquiring as to the litigation costs of the injured employee. We agree.

N.C. Gen. Stat. § 97-88 (2001) provides:

If the Industrial Commission at a hearing on review or any court before which any proceedings are brought on appeal under this Article, shall find that such hearing or proceedings were brought by the insurer and the Commission or court by its decision orders the insurer to make, or to continue payments of benefits, including compensation for medical expenses, to the injured employee, the Commission or court may further order that the cost to the injured employee of such hearing or proceedings including therein reasonable attorney's fee to be determined by the Commission shall be paid by the insurer as part of the bill of costs.

This provision "allows an injured employee to move that its attorney's fees be paid whenever an insurer appeals to the Full Commission, or to a court of the appellate division, and the insurer is required to make payments to the injured employee." *Troutman v. White & Simpson, Inc.,* 121 N.C. App. 48, 53, 464 S.E.2d 481, 485 (1995). Whether to award attorney's fees is within the sound discretion of the Industrial Commission. *See Taylor v. J.P. Stevens Company,* 307 N.C. 392, 397, 298 S.E.2d 681, 684 (1983).

In Conclusion of Law 8, the Commission stated:

> Defendant appealed the Deputy Commissioner's Opinion and Award, and the Full Commission affirmed said opinion with compensation being paid to the plaintiff. In the discretion of the Full Commission, counsel for the plaintiff is entitled to have defendants pay an attorney's fee in the amount of $5,000.00 which is in addition to the amount awarded as a percentage of the plaintiff's compensation. N.C.G.S. § 97-88.

"Under N.C.G.S. § 97-88, the Commission may only award '*the cost to the injured employee of such hearings or proceedings including therein* [a reasonable attorney's fee].' Consequently, under N.C.G.S. § 97-88, the Commission is empowered to award to the injured employee attorney's fees only for the portion of the case attributable to the insurer's appeal(s)." *Troutman,* 121 N.C. App. at 53, 464 S.E.2d at 485 (emphasis in original); *see also Buck v. Procter & Gamble Mfg. Co.,* 58 N.C. App. 804, 806, 295 S.E.2d 243, 245 (1982). As the Commission did not render any findings regarding the costs associated with defending Defendants' appeal of the deputy commissioner's opinion, this cause must be remanded to the Commission for further findings of fact and an entry of attorney's fees award reflective of Plaintiff's costs in defending the appeal.

[6] Plaintiff contends the Commission should have affirmed the deputy commissioner's award of attorney fees in the amount of $5,000 pursuant to N.C. Gen. Stat. § 97-88.1 (2001). The deputy commissioner's opinion and award concluded:

> 11. Although defendant defended this claim alleging that plaintiff committed fraud in prosecuting his claim, there was ample testimony that there was no evidence of plaintiff committing fraud and that these fraudulent allegations were unfounded. However, even though defendant did not list causation as a defense, they also in fact defended the case on causation grounds. While these

grounds were found insufficient by the undersigned and were not persuasive, the causation issue was a valid, good faith defense. Considering the defendant's ultimate defense on a genuine issue but its initial defense, which showed a stubborn unfounded litigiousness in addition to a desire solely to prejudice plaintiff's claim and cast him in an unfavorable light, plaintiff is entitled to attorney fees in the amount of $5,000.00.

On appeal to the Full Commission, instead of affirming the deputy commissioner's award under N.C. Gen. Stat. § 97-88.1, the Commission awarded the same amount, $5,000, pursuant to its authority under N.C. Gen. Stat. § 97-88.

By cross-appeal, Plaintiff contends an award of attorney's fees under N.C. Gen. Stat. § 97-88.1 was appropriate because Defendants' unfounded allegations of fraud and their baseless attacks upon Plaintiff's credibility indicate they brought, prosecuted or defended without reasonable ground. Under N.C. Gen. Stat. § 97-88.1,

[i]f the Industrial Commission shall determine that any hearing has been brought, prosecuted, or defended without reasonable ground, it may assess the whole cost of the proceedings including reasonable fees for defendant's attorney or plaintiff's attorney upon the party who has brought or defended them.

Although the Commission's decision to award attorney's fees under N.C. Gen. Stat. § 97-88.1 is discretionary, *see Taylor*, 307 N.C. at 397, 298 S.E.2d at 684, "[w]hether the defendant had a reasonable ground to bring a hearing is reviewable by this Court *de novo*. This requirement ensures that defendants do not bring hearings out of stubborn, unfounded litigiousness." *Troutman*, 121 N.C. App. at 50-51, 464 S.E.2d at 484.

As stated by the deputy commissioner and as evidenced by the record, Defendants defended reasonably upon the basis of causation. Indeed, Plaintiff's prior back problems and the lack of any explanation of how the fall occurred constituted a sufficient basis for defending on the grounds of causation as the injuries may have been caused by an idiopathic condition unrelated to Plaintiff's employment. While we find it problematic that Defendants initially defended upon unfounded allegations of fraud, we conclude the Commission did not abuse its discretion in deciding against an award of attorney's fees under N.C. Gen. Stat. § 97-88.1.

SMITH-PRICE v. CHARTER BEHAVIORAL HEALTH SYS.

[164 N.C. App. 349 (2004)]

Affirmed in part, reversed in part and remanded for further proceedings.

Judges CALABRIA and STEELMAN concur.