***********
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission affirms with modifications the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties in a Pre-Trial Agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The employee is Robin Towery (Ledford). The employer is Kroehler Furniture Mfg. Co., Inc.
2. At all times relevant to this claim, the employer-employee relationship existed between plaintiff and defendant-employer.
3. The carrier on the risk is N.C. Guaranty Association.
4. The date of the injury is 1 April 2000.
5. The average weekly wage is $955.20, yielding a weekly compensation rate of $588.00.
6. A Form 60 was filed on 22 June 2000 in this matter.
7. Defendant-employer regularly employs three or more employees and all parties are bound by the North Carolina Workers' Compensation Act.
In addition, the parties stipulated into evidence the following: Industrial Commission Forms and a packet of medical records. The issues are: (a) whether the Form 24 termination of benefits as of 14 November 2000 was inadvertently entered on 9 January 2001; (b) whether plaintiff is entitled to temporary total disability from 14 November 2000 to 22 August 2001; (c) whether plaintiff is permanently and totally disabled; (d) who should be plaintiff's treating physician; and (e) what medical treatment plaintiff should receive.
 ***********
Based on the foregoing stipulations and the evidence presented, the Full Commission makes the following:
 FINDINGS OF FACT
1. As of the date of hearing before the deputy commissioner, plaintiff was forty-three years old. Plaintiff began working for defendant-employer, a furniture manufacturer, in 1996 as a cushion sewer.
2. As a result of her job duties with defendant-employer, plaintiff contracted bilateral carpal tunnel syndrome. Defendant-employer admitted liability for plaintiff's bilateral carpal tunnel syndrome on a Form 60 agreement filed 22 June 2000.
3. Dr. Kirkland performed right carpal tunnel release surgery on plaintiff on 18 July 2000 and a left carpal tunnel release on 9 August 2000. Dr. Kirkland determined that plaintiff reached maximum medical improvement on 22 September 2000 with a 3% permanent partial disability rating to the right hand and a 3% permanent partial disability rating to the left hand. He released her to return to work without restrictions.
4. Plaintiff did not return to work on 22 September 2000. A patient work status report signed by Dr. Timothy H. Kirkland on 22 September 2000 indicated that plaintiff was not able to return to work on that date because she did not feel that she could work at that time. However, on 8 October 2000, defendant-carrier filed a Form 28 return to work report indicating that plaintiff had returned to work on 22 September 2000. On 9 October 2000, defendant-carrier terminated plaintiff's workers' compensation payments.
5. Plaintiff, who was without counsel at that time, filed an undated handwritten motion to the Industrial Commission asking that her compensation be reinstated. Plaintiff's motion was granted on 6 November 2000 and defendants were ordered to pay a 10% late penalty on all compensation that had not been paid within 14 days of becoming due.
6. On 26 September 2000, plaintiff filed a change of physician request. A special deputy commissioner denied plaintiff's motion for change of treating physician on 19 October 2000.
7. On 14 November 2000, after the Industrial Commission reinstated plaintiff's compensation, defendants filed a Form 24 application to terminate plaintiff's benefits. Plaintiff, who was still unrepresented, did not file a response to the Form 24.
8. Plaintiff received a check from defendant-carrier for benefits covering the time period of 2 October 2000 to on or about 14 November 2000. Plaintiff wrote a handwritten note, dated 16 November 2000, protesting the amount of the check she received from defendants. In the note, she stated that the check should have covered the time period from 22 September 2000 to 12 November 2000.
9. A special deputy commissioner allowed defendants' Form 24 request to terminate plaintiff's benefits on 9 January 2001.
10. Plaintiff obtained counsel and the Industrial Commission was informed of her representation on 24 January 2001. Defendants voluntarily resumed compensation payments to plaintiff on 22 August 2001. Plaintiff filed a Form 33 request for hearing on the issue of whether plaintiff was totally disabled from 14 November 2000 to 22 August 2001. This was the issue before the deputy commissioner at the 25 June 2003 hearing.
11. Defendants paid temporary total disability compensation to plaintiff from 22 May 2000 to 14 November 2000. Defendants resumed payment of compensation on 22 August 2001. The issue before the Full Commission is whether plaintiff is entitled to temporary total disability compensation from 14 November 2000 to 22 August 2001.
12. At the time Dr. Kirkland released plaintiff to return to work, she had complaints of cervical pain and was referred by him to Dr. Alfred E. Geissele, a spine specialist. A cervical MRI performed on plaintiff on 29 September 2000 showed degenerative disc disease in the cervical area, disc bulges and spondylosis, most marked at C6-7. Plaintiff visited Dr. Ralph J. Maxy upon a referral by Dr. Kirkland. On 9 October 2000, Dr. Maxy prescribed Vicodin and Soma for plaintiff's neck pain and began a series of epidural steroid injections in the cervical spine.
13. Plaintiff returned to Dr. Kirkland on 26 October 2000 and was angry with him for his failure to relate her cervical problems to her employment. On 31 October 2000, Dr. Maxy noted that plaintiff had no improvement in her pain from the medication and three epidural steroid injections. He also did not relate the cervical problem to plaintiff's employment.
14. Dr. Kathryn A. Caulfield, a board-certified hand specialist, saw plaintiff on 27 February 2001 for a second opinion and recommended a repeat nerve conduction study. During plaintiff's 27 April 2001 visit, Dr. Caulfield reviewed the nerve conduction study and was of the opinion that plaintiff had recurrent bilateral carpal tunnel syndrome. Dr. Caulfield recommended a right carpal tunnel release via a dorsal wrist procedure and anterior transposition of the ulnar nerve on the right. On the left, she recommended carpal tunnel release surgery and anterior transposition. Dr. Caulfield recommended that plaintiff remain out of work.
15. Dr. Warren B. Burrows, II became plaintiff's primary treating physician for her occupational disease by agreement of the parties. He examined plaintiff on 22 August 2001. Dr. Burrows diagnosed plaintiff with bilateral carpal tunnel syndrome, bilateral cubital tunnel syndrome and status post right and left carpal tunnel release with recurrent residual symptoms. He recommended median and ulnar nerve release surgery with the right side being done first and a similar procedure to the left. On 4 September 2001, Dr. Burrows performed the following surgeries: right carpal tunnel release, pronator release and cubital tunnel release with neurolysis of the ulnar nerve and anterial submuscular transposition. The same procedures were carried out on 7 December 2001 on plaintiff's left arm.
16. Defendant-employer accepted Dr. Burrows's medical treatment as appropriate.
17. On 11 July 2002, Dr. Burrows placed plaintiff at maximum medical improvement and assigned an 8% permanent partial disability rating to her right arm and a 30% permanent partial disability rating to her left arm. He did not believe plaintiff would be able to return to work until her pain was under reasonable management. He gave plaintiff permanent restrictions of no lifting over 10 to 15 pounds; no use of vibratory or impact tools; and no highly repetitious or production work with the right hand. On the left hand, she was restricted to no continuous lifting or carrying; no frequent lifting or carrying above 2 pounds; occasional lifting limited to 5 pounds; no repetitive use, no significant strenuous use, and no repeated flexion or extension of her left elbow.
18. Plaintiff was justified in not returning to her repetitive work as a sewer with defendant-employer when released by Dr. Kirkland on 22 September 2000. While Dr. Kirkland was of the opinion that plaintiff did not have recurrent carpal tunnel syndrome, both Dr. Caulfield and Dr. Burrows, who are hand specialists, diagnosed plaintiff with recurrent bilateral carpal tunnel syndrome and both physicians opined that she should not return to her repetitive job as a sewer. Greater weight is given to the opinions of Dr. Caulfield and Dr. Burrows over those of Dr. Kirkland. Defendant-employer has accepted the subsequent treatment by Dr. Burrows, who continues to treat plaintiff for her pain. As a result of her bilateral hand and arm problems, plaintiff has not been able to return to work in any employment and remains totally disabled.
19. Defendants appealed to the Full Commission from the decision of the deputy commissioner granting plaintiff's claim for additional compensation. By the decision herein, defendant is required to continue paying compensation to plaintiff. An award of an attorney's fee to plaintiff's attorney as a part of costs of defending this appeal to the Full Commission is reasonable. Plaintiff's counsel has expended 15.30 hours of time in this matter representing plaintiff at the appeal before the Full Commission. Due to his experience, expertise and the valuable service provided to plaintiff, an attorney fee of $2,295.00 is reasonable for plaintiff's counsel.
 ***********
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff contracted an occupational disease, bilateral carpal tunnel syndrome, which disease is proven to be due to causes and conditions which are characteristic of and peculiar to her particular trade, occupation or employment as a sewer with defendant-employer as compared to the general public not so employed. N.C. Gen. Stat. §97-53(13).
2. Plaintiff has been temporarily totally disabled as the result of her occupational disease since 22 May 2000 and is entitled to additional temporary total disability compensation from 14 November 2000 to 22 August 2001, the time period that defendants terminated plaintiff's disability payments until the date compensation was reinstated. N.C. Gen. Stat. § 97-29.
3. The special deputy commissioner's order filed 9 January 2001 terminating temporary total disability benefits to plaintiff was improvidently entered. Plaintiff was justified in not returning to her repetitive job as a sewer or any other employment. N.C. Gen. Stat. § 97-32.
4. Defendants are obligated to pay plaintiff's medical expenses resulting from her compensable occupational disease for so long as such treatment may be reasonably required to effect a cure, provide relief, or lessen the period of disability. N.C. Gen. Stat. §§ 97-2(19), 97-25.
5. Defendants appealed to the Full Commission from the decision of the deputy commissioner granting plaintiff's claim for additional compensation. By the decision herein, defendants are required to continue paying compensation to Plaintiff. Defendants should pay plaintiff's attorney fee as a part of costs for this appeal to the Full Commission. Plaintiff's attorney expended 15.30 hours defending defendants' appeal to the Full Commission. A reasonable attorney's fee for plaintiff's attorney is $2,295.00 for time spent defending defendants' appeal to the Full Commission. See Hodges v. Equity Group, ___ N.C. App. ___, 596 S.E.2d 31
(2004). N.C. Gen. Stat. § 97-88.
 ***********
Based upon the foregoing Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay plaintiff temporary total disability compensation at the rate of $588.00, on a weekly basis from 14 November 2000, the date compensation was terminated, through 22 August 2001, the date compensation was reinstated. Defendants shall continue to pay compensation to plaintiff for total disability until further order of the Commission. All compensation has accrued and shall be paid in a lump sum.
2. Defendants shall pay for all medical expenses incurred or to be incurred by plaintiff as a result of her compensable occupational disease so long as such evaluations, treatments and examinations may reasonably be required to effect a cure, give relief and/or lessen plaintiff's period of disability.
3. Defendants shall pay a reasonable attorney fee in the amount of 25% of the compensation approved and awarded plaintiff in paragraph one. The attorney fee shall be deducted from the compensation due plaintiff and paid directly to plaintiff's attorney. Additionally, defendants shall pay to plaintiff's attorney a reasonable fee as a part of costs for this appeal to the Full Commission in the amount of $2,295.00.
4. Defendant shall pay the costs.
This the ___ day of November 2004.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/_____________ PAMELA T. YOUNG COMMISSIONER
 S/_______________ LAURA K. MAVRETIC COMMISSIONER