MORGAN v. MORGAN MOTOR CO. OF ALBEMARLE

[231 N.C. App. 377 (2013)]

DAVID M. MORGAN, Employee, Plaintiff
v.
MORGAN MOTOR COMPANY OF ALBEMARLE, Employer, and BRENTWOOD
SERVICES, INC., Servicing Agent for the North Carolina Auto Dealers Association
Self-Insurer's Fund, Defendants

No. COA12-1485

Filed 17 December 2013

1. **Workers' Compensation—injury by accident—arising out of employment—occurred in the course of employment—sufficient findings—supported by the evidence**

   The Industrial Commission did not err in a workers' compensation case by denying plaintiff's claim for benefits. The Commission's conclusion that plaintiff's accident did not arise out of, or occur in the course of, his employment with defendant employer was supported by findings of fact that were supported by competent evidence of record.

2. **Workers' Compensation—injury by accident—findings of fact—supported by the evidence**

   The Industrial Commission's challenged finding of fact in a workers' compensation case were supported by competent evidence and supported the Commission's ultimate conclusion that plaintiff's injury was not compensable.

3. **Workers' Compensation—findings of fact—duties based on lease—unambiguous**

   The Industrial Commission did not err in a workers' compensation case in its findings regarding the parties' duties based on a lease or fail to make a finding expressly determining Paragraph 6 of the lease to be unambiguous.

4. **Workers' Compensation—findings of fact—offers of proof—not basis of award**

   The Industrial Commission did not err in a workers' compensation case by failing to make express findings regarding various offers of proof during the hearing before the deputy commissioner. There was no evidence that these offers of proof formed the basis for the Full Commission's opinion and award.

   Judge DILLON dissenting.

Appeal by plaintiff from opinion and award entered 27 August 2012 by the North Carolina Industrial Commission. Heard in the Court of Appeals 6 June 2013.

*Poisson, Poisson & Bower, PLLC, by E. Stewart Poisson and.Fred D. Poisson, Jr., for plaintiff-appellant.*

*Teague, Campbell, Dennis & Gorham, L.L.P., by Bruce A. Hamilton and Carla M. Cobb, for defendants-appellees.*

DAVIS, Judge.

David M. Morgan ("Plaintiff") appeals from the Opinion and Award of the North Carolina Industrial Commission ("the Full Commission" or "the Commission") denying his workers' compensation claim against Morgan Motor Company of Albemarle, Inc. ("Morgan Motors"). The issue before us is whether the Commission erred in concluding that Plaintiff's accident did not arise out of — or occur in the course of — his employment with Morgan Motors. After careful review, we affirm the Full Commission's opinion.

## Factual Background

Plaintiff is a 55-year-old man who was the Secretary-Treasurer, Sales and Financial Manager, and 45.5% owner of Morgan Motors, a family-owned car dealership in Albemarle, North Carolina. Morgan Motors was initially located at 304 East Main Street in Albemarle but relocated in 1992 to a larger location on Highway 52. It continued to own the building at 304 East Main Street after its move to the Highway 52 location.

In 1998 or 1999, Plaintiff and his father had an architect draw up plans to remodel the old dealership building at 304 East Main Street into a restaurant. In 2003, Morgan Motors took out a $2.1 million dollar loan to pay off the mortgage on the Highway 52 building and also to renovate the building at 304 East Main Street. Approximately $1.3 million of the loan proceeds was used to renovate and remodel the old dealership building.

By virtue of a lease signed on 20 October 2004, Morgan Motors leased the old dealership building to Pontiac Pointe, a limited liability company formed by Plaintiff and his business partner, John Williams. Plaintiff's brother, Robert T. Morgan, signed the lease on behalf of Morgan Motors as the landlord along with Plaintiff, Mellanie M. Morgan, and Pamela C. Morgan. Plaintiff also signed the lease on behalf of the tenant, Pontiac

Pointe. Paragraph 6 of the lease — entitled Maintenance, Repairs and Replacements — provided that

> [d]uring the term of this Lease, Landlord [Morgan Motors] shall be responsible for maintenance of the roof and structure of the building and for replacements of heating and air-conditioning equipment and facilities. Tenant [Pontiac Pointe] shall be responsible for all other maintenance and replacements, which do not result by fire or other casualty, and for all normal and routine maintenance, cleaning and repairs to the building, doors, windows and plumbing, air-conditioning and heating and mechanical systems. Tenant shall keep the leased premises in a neat, clean and businesslike condition.

In December 2004, Pontiac Pointe began operating a restaurant at the old dealership building. Plaintiff continued in his roles with Morgan Motors while also acting as the financial manager of Pontiac Pointe. Plaintiff would usually go to Pontiac Pointe each morning to pick up the restaurant's receipts and reports and then make a deposit at the bank.

On 15 January 2008, Plaintiff drove from Morgan Motors to the bank. He then went to Pontiac Pointe to retrieve its cash receipts and daily reports. Plaintiff testified that as he was speaking with Jay Koral, the restaurant's general manager, he heard a noise that sounded like "a bearing that was going bad" in the air-conditioning unit on the roof. Plaintiff explained that after they "had an experience of already replacing part of that unit up there, [he] thought [he] needed to look at it and try to determine whether we needed somebody to come look at the system or not . . . ." Plaintiff accessed the roof via an internal ladder. He was found shortly thereafter lying on the ground in the back patio area of the restaurant. Plaintiff did not remember falling but did testify that there was black ice on the roof. Plaintiff suffered a C7 spinal cord injury, leaving him paralyzed from the waist down. He also broke his collarbone and several ribs and had to have his spleen removed.

Defendants Morgan Motors and Brentwood Services, Inc., the third-party administrator for the North Carolina Auto Dealers Association Self-Insurer's Fund, denied Plaintiff's workers' compensation claim on the basis that his injury did not arise out of — or occur in the course of — Plaintiff's employment with Morgan Motors. The matter was heard by Deputy Commissioner George T. Glenn, II on 7 March 2011 and 23 May 2011. Deputy Commissioner Glenn filed an opinion and award on 23 January 2012 finding that Plaintiff "sustained a compensable injury

by accident arising out of and in the course and scope of his employment with Employer Defendant [Morgan Motors]." He determined that Plaintiff was therefore entitled to medical expenses, attendant care expenses, and compensation in the amount of $786.00 per week until further order or until Plaintiff returned to suitable employment at his pre-injury average weekly wage.

Defendants appealed to the Full Commission. On 27 August 2012, the Full Commission issued an opinion reversing Deputy Commissioner Glenn's opinion and award, concluding that Plaintiff's injury did not arise out of, or occur within the course and scope of, his employment with Morgan Motors. Plaintiff gave timely notice of appeal to this Court.

## Analysis

Our review of an opinion and award of the Industrial Commission is "limited to consideration of whether competent evidence supports the Commission's findings of fact and whether the findings support the Commission's conclusions of law." *Richardson v. Maxim Healthcare/ Allegis Grp.*, 362 N.C. 657, 660, 669 S.E.2d 582, 584 (2008). With regard to review of the Commission's findings of fact, this Court's "duty goes no further than to determine whether the record contains any evidence tending to support the finding[s]." *Id.* (citation and quotation marks omitted). The findings of fact made by the Commission are conclusive on appeal if supported by competent evidence even if there is also evidence that would support a contrary finding. *Nale v. Ethan Allen*, 199 N.C. App. 511, 514, 682 S.E.2d 231, 234, *disc. review denied*, 363 N.C. 745, 688 S.E.2d 454 (2009). The Commission's conclusions of law, however, are reviewed *de novo*. *Gregory v. W.A. Brown & Sons*, 212 N.C. App. 287, 295, 713 S.E.2d 68, 74, *disc. review denied*, ___ N.C. ___, 719 S.E.2d 26 (2011).

## I. "Arising Out Of" and "In The Course Of" Elements

[1] "Under the Workers' Compensation Act, an injury is compensable only if it is the result of an accident arising out of and in the course of the employment." *Chavis v. TLC Home Health Care*, 172 N.C. App. 366, 370, 616 S.E.2d 403, 408 (2005) (citation and quotation marks omitted), *appeal dismissed*, 360 N.C. 288, 627 S.E.2d 464 (2006). "The phrases 'arising out of' and 'in the course of' one's employment are not synonymous but rather are two separate and distinct elements[,] both of which a claimant must prove to bring a case within the Act." *Gallimore v. Marilyn's Shoes*, 292 N.C. 399, 402, 233 S.E.2d 529, 531 (1977).

"Arising out of employment relates to the origin or cause of the accident." *Hedges v. Wake Cty. Pub. Sch. Sys.*, 206 N.C. App. 732, 735, 699 S.E.2d 124, 126 (2010) (citation and quotation marks omitted), *disc. review denied*, ___ N.C. ___, 705 S.E.2d 746 (2011). "The controlling test of whether an injury arises out of the employment is whether the injury is a natural and probable consequence of the nature of the employment." *Dildy v. MBW Inv., Inc.*, 152 N.C. App. 65, 69, 566 S.E.2d 759, 763 (2002) (citation and quotation marks omitted). "In other words, the employment must be a contributing cause or bear a reasonable relationship to the employee's injuries." *Rivera v. Trapp*, 135 N.C. App. 296, 301, 519 S.E.2d 777, 780 (1999). Thus, an injury is compensable under the Workers' Compensation Act if "it is fairly traceable to the employment or any reasonable relationship to the employment exists." *Id.* (citations and quotation marks omitted).

"The words 'in the course of' refer to the time, place, and circumstances under which an accident occurred. The accident must occur during the period and place of employment." *Chavis*, 172 N.C. App. at 370, 616 S.E.2d at 408 (citation and quotation marks omitted). "An employee is injured in the course of his employment when the injury occurs 'under circumstances in which the employee is engaged in an activity which he is authorized to undertake and which is calculated to further, directly or indirectly, the employer's business.' " *Shaw v. Smith & Jennings, Inc.*, 130 N.C. App. 442, 446, 503 S.E.2d 113, 116 (1998) (quoting *Powers v. Lady's Funeral Home*, 306 N.C. 728, 730, 295 S.E.2d 473, 475 (1982)).

In discussing the respective roles of the Industrial Commission and a reviewing court, our Supreme Court has made clear that

> (1) the Full Commission is sole judge of the weight and credibility of the evidence, and (2) appellate courts reviewing Commission decisions are limited to reviewing whether any competent evidence supports the Commission's findings of fact and whether the findings of fact support the Commission's conclusions of law.

*Deese v. Champion Int'l Corp.*, 352 N.C. 109, 116, 530 S.E.2d 549, 553 (2000). When making determinations of credibility, the Industrial Commission is not obligated to explain why it deemed certain evidence credible or not credible. *Id.* This is so because

> [r]equiring the Commission to explain its credibility determinations and allowing the Court of Appeals to review the Commission's explanation of those credibility determinations would be inconsistent with our legal system's

tradition of not requiring the fact finder to explain why he or she believes one witness over another or believes one piece of evidence is more credible than another.

*Id.*

In its Opinion and Award, the Full Commission based its conclusion that Plaintiff's injury was not compensable on the following findings of fact:

> 11.  Pursuant to the terms of the Lease, Pontiac Pointe was to pay $13,000 per month in rent to the dealership. The rent amount was based on the $1.3 million loan that the dealership incurred to refurbish the 304 East Main Building. Pontiac Pointe never paid any rent money to Morgan Motors during the entire time it leased the premises.
>
> 12.  The lease between the restaurant and dealership also provided the following in Paragraph 6:
>
> > Maintenance, Repairs, and Replacements. During the term of this lease, Landlord shall be responsible for maintenance of the roof and structure of the building and for replacements of heating and air-conditioning equipment and facilities. Tenant shall be responsible for all other maintenance and replacements, which do not result by fire or other casualty, and for all normal and routine maintenance, cleaning and repairs to the building, doors, windows and plumbing, air-conditioning and heating and mechanical systems. Tenant[] shall keep the leased premises in a neat, clean and business like condition.
>
> . . . .
>
> 14.  In addition to being part owner of the restaurant, plaintiff served as the financial manager of the restaurant, with tasks consisting of paying bills, keeping the financial books, and doing payroll. Plaintiff was in charge of supervising the operation of the restaurant, including the hiring and supervision of the General Manager, Jay Koral, hired to manage and handle the day-to-day affairs of the restaurant. Mr. Koral had contact with plaintiff on a daily basis pertaining to the restaurant's finances and operations, and plaintiff would usually eat dinner at the restaurant on Wednesday, Friday and Saturday nights.

15. Plaintiff's brothers, including Terry [Robert T. Morgan], majority co-owner of the dealership, had no input with regard to the renovations of [the] 304 East Main building and had no financial or managerial involvement with Pontiac Pointe. Plaintiff's brothers did not perform any maintenance at the restaurant nor were they ever asked to help with any maintenance or repairs or asked to inspect anything at Pontiac Pointe.

16. Pursuant to the lease agreement, Pontiac Pointe paid for maintenance and repairs, including maintenance and repair to the HVAC system. On occasion, employees of Pontiac Pointe would attempt to maintain or repair equipment at Pontiac Pointe "in house" prior to contacting outside contractors.

17. Pontiac Pointe's responsibility for the maintenance and repair of all of the equipment at 304 East Main Street is corroborated by the financial records documenting payments made by Pontiac Pointe for routine maintenance contracts, repairs and maintenance to the HVAC system, plumbing, and mechanical systems.

18. No dealership operations occurred at the 304 East Main Street property following the move to Highway 52 in 1992. Morgan Motors hired no employees to provide any maintenance work or inspections at Pontiac Pointe or to assist in the restaurant operations. Based upon a preponderance of the evidence of record, the Full Commission finds that Pontiac Pointe and Morgan Motors were two entirely separate entities.

19. Pontiac Pointe obtained a separate workers' compensation policy for Pontiac Pointe through Travelers. Plaintiff excluded himself from coverage under the restaurant's workers' compensation policy with Travelers.

20. Plaintiff's usual practice was to go to Pontiac Pointe first thing every morning to pick up the previous day's receipts and reports and then make a deposit. While picking up the receipts and reports, plaintiff would discuss the restaurant operations with the restaurant General Manager, Jay Koral. On January 15, 2008, plaintiff first went by Morgan Motors to get money out of the safe and then made a deposit at the Bank of Stanley. Plaintiff then

performed his usual routine of going to Pontiac Pointe to pick up the previous night's receipts and operating report.

21. On January 15, 2008, plaintiff arrived at Pontiac Pointe at approximately 8:00 a.m. to 9:00 a.m. and met with the restaurant's General Manager, Jay Koral, in the third floor office to discuss the previous night's specials at the restaurant and whether the specials had sold. In addition, plaintiff was obtaining financial information about Pontiac Pointe's previous night's operations.

22. While speaking with Jay Koral in the restaurant's third floor office, plaintiff stated that he heard a noise on the roof. Mr. Koral testified at his deposition that he did not hear any noise.

23. Plaintiff testified that he went up on the roof because he was concerned that a "bearing" might be going bad; however, plaintiff had no general mechanical training or specific training in the repair or maintenance of HVAC systems, admitted that he did not know the source of the alleged noise, no noise was heard by Mr. Koral at all, although he was standing next to the plaintiff, and no subsequent repairs or maintenance were done on the HVAC system.

. . . .

27. Following plaintiff's accident, neither Morgan Motors Company nor the new dealership owner had to repair or replace any part of the heating or air conditioning equipment at the restaurant, nor were there any problems with the HVAC system when the Pontiac Pointe building was eventually sold.

28. Based upon a preponderance of the evidence of record, the Full Commission finds that plaintiff was acting solely on behalf of and for the benefit of Pontiac Pointe as the owner of Pontiac Pointe at all times relevant to this action. The Full Commission further finds that plaintiff's decision to go on the roof of 304 East Main Street was not in furtherance or related in any way to his employment with Morgan Motors. The Full Commission finds plaintiff's contention that his intent was to benefit Morgan Motors, not credible.

29. Furthermore, to the extent that plaintiff's contention that he was worried about a "bearing going bad" or some other problem with the HVAC system is deemed credible, there was still no benefit to Morgan Motors, since the obligation for repair and maintenance of the HVAC system was the responsibility of Pontiac Pointe per the lease. Any alleged benefit which plaintiff now contends was conferred upon Morgan Motors is speculative at best and is not credible based upon the following facts: plaintiff excluded himself from the workers' compensation coverage for Pontiac Pointe through Travelers, plaintiff has an incentive for now contending that his actions were on behalf of Morgan Motors and not Pontiac Pointe, and since Pontiac Pointe paid no rent to Morgan Motors despite the $1.3 million loan liability the dealership incurred.

. . . .

31. Based on a preponderance of the evidence of record, the Full Commission finds that plaintiff's action in going up on the roof of 304 East Main Street had no reasonable relationship to his employment with Morgan Motors. Plaintiff did not know the source of the noise, the noise was not heard by Jay Koral standing next to the plaintiff, plaintiff had no intention of replacing the HVAC system, and no repairs or maintenance needed to be done to the HVAC system following the accident on January 15, 2008.

32. Based upon the lease provisions and the pattern and practice of Pontiac Pointe, plaintiff had no legal obligation to go up on the roof on behalf of Morgan Motors on January 15, 2008.

33. Based upon a preponderance of the evidence of record, the Full Commission finds that plaintiff was at Pontiac Pointe on the morning of January 15, 2008 for the sole purpose of conducting Pontiac Pointe financial operations and he was there solely in his role as the owner/financial manager of Pontiac Pointe. At no point during his decision to go up on the roof did plaintiff deviate from his role as the owner/financial manager of Pontiac Pointe and plaintiff's contention that he was going up on the roof on behalf of Morgan Motors is not credible.

34. Based upon a preponderance of the evidence of record, the Full Commission finds that plaintiff's fall on January 15, 2008 did not arise out of his employment with Morgan Motors.

35. Based upon a preponderance of the evidence of record, the Full Commission further finds that plaintiff's fall on January 15, 2008 did not occur in the course of his employment with Morgan Motors.

Thus, the Commission's ultimate determination that Plaintiff's injury was not compensable rested on its findings that the accident neither arose out of, nor occurred in the course of, his employment with Morgan Motors. In analyzing the "arising out of" element, the Commission found that Plaintiff's accident "was not a natural or probable consequence of his employment with Morgan Motors" because his act of climbing up to the roof was not "causally related to his duties with Morgan Motors, but was instead directly related to his ownership and management of Pontiac Pointe." *See Mintz v. Verizon Wireless*, ___ N.C. App. ___, ___, 735 S.E.2d 217, 221 (2012) ("[A]n injury arises out of the employment when it is a natural and probable consequence or incident of the employment and a natural result of one of its risks, so that there is some causal relation between the injury and the performance of some service of the employment.") (citation and quotation marks omitted)).

Specifically, the Commission relied upon Pontiac Pointe's and Morgan Motors' respective obligations under the lease, finding that (1) Pontiac Pointe was responsible for maintenance or repairs to the HVAC system; (2) Pontiac Pointe employees would, on occasion, attempt to repair HVAC equipment themselves before contacting an outside contractor; and (3) the financial records documenting the past practices of Pontiac Pointe and Morgan Motors were consistent with the obligations of both parties as spelled out in the lease. The Commission thus concluded that Plaintiff's actions leading up to his accident did not arise out of his employment with Morgan Motors because he was not under an obligation to check the HVAC system on behalf of Morgan Motors and his actions were instead solely for the benefit of, and on behalf of, Pontiac Pointe.

Similarly, the Commission concluded that Plaintiff's injury did not occur in the course of his employment with Morgan Motors because Plaintiff

was at the restaurant at a time he would normally be at the restaurant performing his duties as the owner/financial

> manager of the restaurant. Plaintiff's duties with Morgan
> Motors did not take him to the restaurant for anything on
> the day of the accident [and] Plaintiff was not engaged
> in any activity that he was authorized to undertake for
> Morgan Motors pursuant to the lease at the time of
> the accident.

*See Powers*, 306 N.C. at 730, 295 S.E.2d at 475 ("A claimant is injured in the course of employment when the injury occurs during the period of employment at a place where an employee's duties are calculated to take him, and under circumstances in which the employee is engaged in an activity which he is authorized to undertake and which is calculated to further, directly or indirectly, the employer's business.").

The Commission based its conclusion that Plaintiff's accident did not occur in the course of his employment with Morgan Motors on its findings that (1) on the morning of the accident, Plaintiff was at the old dealership building for the purpose of conducting his business as the financial manager of Pontiac Pointe (and not pursuant to any duties he had as an employee of Morgan Motors); (2) he was at the building during the time of day that he typically conducted his business as owner and financial manager of Pontiac Pointe; and (3) his action of climbing up to the roof was not authorized by or undertaken to benefit Morgan Motors.

While Plaintiff testified that he climbed up on the roof out of a concern that a bearing in the air conditioning unit was "going bad" (thereby potentially implicating Morgan Motors' obligation under the lease to replace heating and air conditioning equipment), the Commission specifically found that his testimony on this issue lacked credibility. The Commission also found that he had no general mechanical training or knowledge; "that he did not know the source of the alleged noise;" and that Koral did not hear any noise at all. The Commission further determined that Plaintiff's "contention that his intent was to benefit Morgan Motors [was] not credible" and that any alleged benefit that Plaintiff "now contends was conferred upon Morgan Motors is speculative at best . . . ." These credibility determinations by the Commission are not reviewable on appeal. *See Seay v. Wal-Mart Stores, Inc.*, 180 N.C. App. 432, 434, 637 S.E.2d 299, 301 (2006) ("This Court may not weigh the evidence or make determinations regarding the credibility of the witnesses.").

Plaintiff concedes that the Commission found his testimony that "his intent was to benefit Morgan Motors [was] not credible." However, he argues that its findings relating to his decision to climb up to the roof were erroneous because, in making them, the Commission failed to

take into account the fact that Plaintiff was the designated "point person" authorized to address any issues regarding the conditions of the old dealership building on Morgan Motors' behalf. Plaintiff thus asserts that the Full Commission's finding that he "was acting solely on behalf of and for the benefit of Pontiac Pointe as the owner of Pontiac Pointe at all times relevant to this action" is erroneous. In making this contention, he argues that his actions leading up to the accident could have benefitted Pontiac Pointe yet still constituted a compensable injury by accident because those same actions also conferred a benefit upon Morgan Motors. In support of this "dual benefit" argument, Plaintiff cites *Watkins v. City of Wilmington*, 290 N.C. 276, 225 S.E.2d 577 (1976). In *Watkins*, our Supreme Court affirmed the Commission's determination that an on-duty firefighter's accident while assisting a co-worker in the maintenance of a personal automobile was compensable. *Id.* at 285, 225 S.E.2d at 583. The Court reasoned that

> [a]cts of an employee for the benefit of third persons generally preclude the recovery of compensation for accidental injuries sustained during the performance of such acts, usually on the ground they are not incidental to any service which the employee is obligated to render under his contract of employment, and the injuries therefore cannot be said to arise out of and in the course of the employment. . . . However, where competent proof exists that the employee understood, or had reasonable grounds to believe that the act resulting in injury was incidental to his employment, or such as would prove beneficial to his employer's interests or was encouraged by the employer in the performance of the act or similar acts for the purpose of creating a feeling of good will, or authorized so to do by common practice or custom, compensation may be recovered, since then a causal connection between the employment and the accident may be established.

*Id.* at 283, 225 S.E.2d at 582 (citation and quotation marks omitted).

The Court then determined that the plaintiff's act of assisting in the maintenance of a co-worker's personal vehicle was a reasonable activity and a risk of his employment as a firefighter because (1) his superiors at the fire department had authorized the practice of making minor repairs to personal vehicles while on duty; and (2) those repairs were "to an appreciable extent a benefit to the fire department" because firefighters used their personal vehicles to respond to emergencies when they were called in from off duty. *Id.* at 284, 225 S.E.2d at 582.

**MORGAN v. MORGAN MOTOR CO. OF ALBEMARLE**

[231 N.C. App. 377 (2013)]

We believe the present case is readily distinguishable from *Watkins*. Unlike in *Watkins*, Plaintiff here failed to show that his actions leading up to the accident were authorized by Morgan Motors. Moreover, competent evidence supported the Commission's finding that any benefit accruing to Morgan Motors from Plaintiff's actions was "tenuous, immeasurable, speculative, and remote."

In asserting that he was authorized by Morgan Motors to inspect the HVAC system and that the Commission erred by failing to make findings regarding his role as the "point person" for Morgan Motors in this regard, Plaintiff relies heavily on a brief portion of his brother's testimony. When asked on direct examination if he [Robert T. Morgan] had ever completed any maintenance or repairs at the old dealership building after Pontiac Pointe began leasing the property, his brother replied: "I really didn't have hardly anything to do with Pontiac Point[e]. David did most of that because he was down there approximately every day." Plaintiff contends that this testimony affirmatively established that he "was authorized [by Morgan Motors] to undertake the activity he was undertaking when his accident occurred and that his co-majority owner in fact relied upon him to do so." We believe, however, that the brief testimony of Plaintiff's brother on this point fell well short of *compelling* a finding by the Full Commission that Plaintiff was authorized by Morgan Motors to take these actions or that he was acting for the benefit of Morgan Motors at the time of the accident.

In a workers' compensation action, the plaintiff "has the burden to prove each element of compensability." *Holley v. ACTS, Inc.*, 357 N.C. 228, 234, 581 S.E.2d 750, 754 (2003). Plaintiff simply failed to offer evidence requiring the Commission to find that (1) his job duties with Morgan Motors included inspecting the HVAC system for potential malfunctions; (2) he was authorized by Morgan Motors to undertake these actions; (3) his accident was a result of a risk inherent in his employment with Morgan Motors; or (4) he was acting on behalf, or for the benefit, of Morgan Motors at the time of the accident. Given that it was Plaintiff's burden to produce such evidence and he failed to meet this burden, we cannot say that the Commission erred in its determination that Plaintiff's accident neither arose out of nor occurred in the course of his employment with Morgan Motors.

In reaching a contrary conclusion, the dissent goes beyond the scope of appellate review applicable in workers' compensation cases. Our Supreme Court has made clear that when reviewing an opinion and award from the Industrial Commission, an appellate court "does not have the right to weigh the evidence and decide the issue on the

basis of its weight." *Adams v. AVX Corp.*, 349 N.C. 676, 681, 509 S.E.2d 411, 414 (1998) (citation and quotation marks omitted). Our review is purely "limited to consideration of whether competent evidence supports the Commission's findings of fact and whether the findings support the Commission's conclusions of law." *Richardson*, 362 N.C. at 660, 669 S.E.2d at 584.

Thus, while the dissent discusses the doctrine of joint employment — which provides that two employers may be jointly liable for workers' compensation benefits to the same employee if he is simultaneously performing services for both at the time of his injury by accident — such an analysis is inapplicable here based on the findings of fact of the Industrial Commission. Where — as here — there is competent evidence to support the Commission's findings of fact and those factual findings support its conclusions of law, our review is at an end. *See Johnson v. S. Tire Sales & Serv.*, 358 N.C. 701, 705, 599 S.E.2d 508, 512 (2004) ("The Commission's findings of fact are conclusive on appeal when supported by competent evidence even though evidence exists that would support a contrary finding.") (citation and quotation marks omitted)).

We "are not at liberty to reweigh the evidence and to set aside the findings of the Commission, simply because other inferences could have been drawn and different conclusions might have been reached." *Hill v. Hanes Corp.*, 319 N.C. 167, 172, 353 S.E.2d 392, 395 (1987) (citation and quotation marks omitted). The dissent relies on the notions that Morgan Motors had an interest in "keeping tabs" on the HVAC unit and a "need to make regular determinations regarding the condition of its investment" to support its conclusion that Plaintiff's actions provided an "appreciable benefit" to Morgan Motors, but these findings simply were not made by the Commission.

In short, the dissent reaches a result based on findings the Industrial Commission could have conceivably made but did not actually make. Such an analysis is inconsistent with our standard of review in workers' compensation cases. Because the result the Commission reached is supported by findings of fact that are supported by competent evidence of record, our analysis must end there.

The dissent does not deny the existence of competent evidence in the record to support all of the findings of fact made by the Commission. Nor does it explain why these findings do not support the Commission's legal conclusions. Instead, the dissent — in essence — is claiming that the facts of this case could have supported a different conclusion. The

dissent asserts that the Commission's findings are not "determinative" or "dispositive" on the issue of Morgan Motors' liability. However, the correct standard is merely whether the Commission's factual findings *support* its conclusions — not whether other conclusions could have possibly been drawn. *See Rose v. City of Rocky Mount*, 180 N.C. App. 392, 400, 637 S.E.2d 251, 257 (2006) ("We may not substitute our own judgment for that of the Commission, even though the evidence might rationally justify reaching a different conclusion.") (citation and quotation marks omitted)), *disc. review denied*, 361 N.C. 356, 644 S.E.2d 232 (2007).

## II. Findings of Fact 23 and 27

[2] In addition to those findings of the Commission addressed in his primary argument on appeal, Plaintiff also contends that findings 23 and 27 are not supported by competent evidence and, therefore, do not support the Commission's ultimate conclusion that Plaintiff's injury was not compensable. In making this argument, he focuses on the specific portions of those findings referencing the absence of subsequent repairs or maintenance to the HVAC system following the accident.

During the hearing before the deputy commissioner, Robert T. Morgan testified that he was not aware of any replacements of HVAC equipment after Plaintiff's injury. When asked if "[a]s part of the foreclosure process, was Morgan Motors asked to replace any equipment on top of the roof?," he replied: "Not that I know of." We conclude that this testimony constituted competent evidence upon which the Commission could base its findings that no subsequent replacements or repairs to the HVAC system occurred in the aftermath of Plaintiff's injury or when the building was ultimately sold.

Furthermore, even assuming *arguendo* that these findings were unsupported by any competent evidence of record or that the existence (or nonexistence) of post-accident repairs or maintenance lacked relevance to the question of whether Plaintiff's injury was compensable, we believe the remaining findings by the Commission — as discussed in detail above — adequately support its ultimate conclusion. *See Meares v. Dana Corp.*, 193 N.C. App. 86, 89-90, 666 S.E.2d 819, 823 (2008) ("Where there are sufficient findings of fact based on competent evidence to support the Commission's conclusions of law, the award will not be disturbed because of other erroneous findings which do not affect the conclusions.") (citation, quotation marks, and alterations omitted)), *disc. review denied*, 363 N.C. 129, 673 S.E.2d 359 (2009).

## III. Interpretation of the Lease

[3] Plaintiff also asserts that the Commission erred by failing to make an explicit finding as to whether Paragraph 6 of the lease between Morgan Motors and Pontiac Pointe was ambiguous. Our review of the Commission's findings lead us to conclude that it determined the lease provision was unambiguous — that is, Pontiac Pointe was to pay for maintenance and repairs of the HVAC system while Morgan Motors was to pay for the replacement of HVAC system equipment. "When the parties use clear and unambiguous terms, the contract should be given its plain meaning, and the court can determine the parties' intent as a matter of law." *42 East, LLC v. D.R. Horton, Inc.*, ___ N.C. App. ___, ___, 722 S.E.2d 1, 8 (2012) (citation and quotation marks omitted). In our view, the plain language of Paragraph 6 of the lease makes clear the respective obligations of the parties regarding the HVAC system.[1] Accordingly, we conclude that the Commission did not err in its findings regarding the parties' duties based on the lease. Nor did it err in failing to make a finding expressly determining Paragraph 6 to be unambiguous.

## IV. Morgan Motors' Offers of Proof

[4] Finally, Plaintiff asserts that the Full Commission erred by failing to make express findings regarding various offers of proof made by Morgan Motors during the hearing before the deputy commissioner. As there is no evidence that these offers of proof formed the basis for the Full Commission's Opinion and Award, we will not assume that the Commission relied upon this evidence in reaching its conclusions. *See McKyer v. McKyer*, 182 N.C. App. 456, 463, 642 S.E.2d 527, 532 (2007) ("An appellate court is not required to, and should not, assume error by the trial [tribunal] when none appears on the record before the appellate court.") (citation and quotation marks omitted)). This argument is accordingly overruled.

### Conclusion

For the reasons stated above, we affirm the Opinion and Award of the Full Commission.

---

1. Plaintiff also argues that the Commission erred by failing to take into account Morgan Motors' admission that it paid a 2005 bill for a new compressor in the HVAC system. As the payment was for the *replacement* of the compressor, however, this evidence simply corroborates the fact that the parties acted in accordance with their understanding of the unambiguous obligation of Morgan Motors under Paragraph 6 of the lease to replace HVAC equipment.

MORGAN v. MORGAN MOTOR CO. OF ALBEMARLE

[231 N.C. App. 377 (2013)]

AFFIRMED.

Judge CALABRIA concurs.

DILLON, Judge, dissenting.

While I believe the Commission's findings support a conclusion that Pontiac Pointe may be liable for Plaintiff's injuries, I also believe that these same findings compel a conclusion that Morgan Motors is also liable. I do not believe that the Commission made any findings which compel its conclusion that Plaintiff failed to meet his burden of proving that the accident "arose out of his employment with Morgan Motors [or that it] occurred during the course and scope of his employment with Morgan Motors." Accordingly, I respectfully dissent.

While it has been said that a person cannot serve two masters, this is not the rule when determining liability for workers' compensation coverage under North Carolina law. Rather, our courts have recognized that there may be situations where an employee sustains an injury while in the service of two different employers. Specifically, our Court has stated as follows:

> Joint employment . . . occurs when 'a single employee, *under contract* with two employers, and under the simultaneous control of both, simultaneously performs services for both employers, and when the service for each employer is the same as, or is closely related to, that for the other. In such a case, both employers are liable for workman's compensation.

*Anderson v. Texas Gulf, Inc.*, 83 N.C. App. 634, 636, 351 S.E.2d 109, 110 (1986) (quoting 1C, Larson, *The Law of Workmen's Compensation* § 48.40). Our Supreme Court has held that where two employers are liable for an employee's injuries, the employee "ha[s] the right to proceed" against either employee or against both. *Leggette v. McCotter*, 265 N.C. 617, 623, 144 S.E.2d 849, 853 (1965); *see also Hughart v. Dasco Transportation, Inc.*, 167 N.C. App. 685, 691, 606 S.E.2d 379, 383 (2005) (recognizing the concept of "joint employment" where the employee has a contract, whether "express or implied" with each employer); *Henderson v. Manpower*, 70 N.C. App. 408, 415, 319 S.E.2d 690, 694 (1984) (holding that each employer is "liable equally" in compensating the employee for a work-related injury).

Our Supreme Court has stated that the "compensability of a claim basically turns upon whether or not the employee was acting for the benefit of his employer 'to any appreciable extent' when the accident occurred." *Hoffman v. Truck Lines, Inc.*, 306 N.C. 502, 506, 293 S.E.2d 807, 809 (1982) (citation omitted). In this case, I believe that the Plaintiff's action to determine the source of a noise on the roof where the HVAC system was located - a system which his employer Morgan Motors owned – benefited Morgan Motors to some "appreciable extent"; and, accordingly, I believe that Morgan Motors is liable for Plaintiff's injuries sustained when he fell off the roof. Specifically, the Commission found that Morgan Motors owned the building where the accident occurred; that Morgan Motors borrowed $1.3 million[1] to renovate the building; that Morgan Motors leased the renovated building to Pontiac Pointe for $13,000.00 per month; that Pontiac Pointe never actually paid any of the rent due under the lease; that under the lease, Morgan Motors was responsible for "replacements of [HVAC] equipment" and Pontiac Pointe was responsible for "all normal and routine maintenance [to the HVAC system]"; that Plaintiff was an employee of both Morgan Motors and Pontiac Pointe; that Plaintiff was the only owner of Morgan Motors who was involved with the renovations of the building; and that Morgan Motors had no other employees whose responsibility was to oversee the condition of the building. Further, the Full Commission found that, on the day of the accident, Plaintiff heard a noise on the roof but he "did not know the source of the noise"; that Plaintiff climbed on the roof with a wrench; and that Plaintiff slipped from the roof and sustained injuries.

The Full Commission made a number of findings which, Defendants argue, support the conclusion that Morgan Motors was not liable for Plaintiff's injuries when he decided to climb on the roof. However, I do not believe that any of these findings compel a conclusion that Morgan Motors is not liable in this case. For instance, the Full Commission found that "[P]laintiff's contention that his intent was to benefit Morgan Motors [is] not credible." I do not believe, though, that Plaintiff's "intent" is dispositive on the issue of Morgan Motors' liability. In other words, I believe that under North Carolina law, Morgan Motors can still be found liable as Plaintiff's employer for Plaintiff's injuries even though Plaintiff had no specific intent to benefit Morgan Motors when he climbed on the roof to investigate the noise. Our Supreme Court has held that coverage may be found even where an employee's intent is to benefit a third

---

1. Though not included in the findings by the Full Commission, the Deputy Commissioner found – and the evidence is uncontradicted – that over $100,000.00 of the loan proceeds funded spent a new HVAC system for the building.

party as long as "the acts benefit the employer to an appreciable extent". *Roberts v. Burlington Industries*, 321 N.C. 350, 355, 364 S.E.2d 417, 421 (1988) (citation omitted). Accordingly, even though the Commission failed to find that Plaintiff *intended* to benefit Morgan Motors, Morgan Motors may still be held liable since Plaintiff's actions, in attempting to determine the source of the noise on the roof where the HVAC was located, would have some "appreciable" benefit to Morgan Motors as the owner of the building.

Further, I do not believe that the Full Commission's finding - that Plaintiff was at the building on the day of the accident "for the sole purpose of conducting [work for Pontiac Pointe and that] his decision to go up on the roof [did not] deviate from his role as the owner/financial manager of Pontiac Pointe" - is dispositive on the issue of Morgan Motors' liability. Rather, I believe this finding *only* supports a determination that Pontiac Pointe may also be liable to Plaintiff for his injuries. I agree with the Commission that Plaintiff was acting for the sole benefit of Pontiac Pointe – and thereby deviated from his employment with Morgan Motors - when he traveled to the building to meet with the restaurant manager about the financial performance of the restaurant. However, I believe this deviation from his employment with Morgan Motors ceased when he made the decision to climb on the roof to determine the source of the noise, notwithstanding that this decision might *not* have been a deviation from his employment with Pontiac Pointe, because this decision conferred an "appreciable" benefit on both his employers: Both had an interest in the maintenance of the building and the HVAC system. *See Jackson v. Dairymen's Creamery*, 202 N.C. 196, 162 S.E. 359 (1932) (holding that an employee who has deviated from his employment is covered for injuries occurring after he returns to work).

Also, I do not believe the Full Commission's determination that Morgan Motors had no "legal obligation" under its lease to send an employee onto the roof to determine the nature of the noise is determinative of Morgan Motors' liability for Plaintiff's accident. In other words, even if Morgan Motors had no such "legal obligation" under its lease agreement, Morgan Motors still had a significant interest as the building's owner to make sure that its new HVAC system was being properly maintained by its tenant. *See Hoffman*, 306 N.C. at 507-08, 293 S.E.2d at 810 (stating that "an employer would not be permitted to escape his liability or obligations under the [Workers' Compensation] Act through the use of a special contract or agreement if the elements required for coverage of the injured individual would otherwise exist"). Even if the potential replacement of the HVAC system was merely "speculative and

remote," as found by the Commission, Morgan Motors still had a significant interest, as the owner of the HVAC system and building, in "keeping tabs" on the condition of its $1.3 million investment, notwithstanding any obligation of its tenant to maintain this investment in good repair. Morgan Motors' need to make regular determinations regarding the condition of its investment is bolstered by the Full Commission's finding that Morgan Motors' tenant was not meeting its financial obligation to pay rent.

Finally, I do not believe that the Full Commission's determination that Plaintiff's activity was not "authorized" by Morgan Motors is relevant as to Morgan Motors' liability based on the evidence in this case. There is nothing in the evidence nor did the Commission make any finding to suggest that Plaintiff was expressly prohibited by anyone at Morgan Motors from climbing onto the roof of the building to make an inspection. Rather, the findings by the Full Commission suggest that Plaintiff was the only employee of Morgan Motors who had any involvement with the building. This Court has held as follows:

> [I]f an employee does something which he is not specifically ordered to do by a then present superior and the thing he does furthers the business of the employer although it is not part of the employee's job, an injury sustained by accident while he is so performing is in the course of employment. This has been characterized as "being about his work."

Parker v. Burlington Industries, Inc., 78 N.C. App. 517, 519-20, 337 S.E.2d 589, 591 (1985); see also Hensley v. Caswell Action Committee, 296 N.C. 527, 531, 259 S.E.2d 399, 401 (1978) (holding that coverage exists where an employee's actions, though not expressly authorized, are "not so extreme as to break the causal connection between his employment and his [injury]").

In conclusion, I believe that the actions of Plaintiff as found by the Commission - that Plaintiff climbed onto the roof of the building to determine the source of a noise coming from the HVAC system owned by and paid for by Morgan Motors – served to benefit Morgan Motors to some "appreciable extent," and that, therefore, these findings do not support a conclusion that Morgan Motors is not liable for the injuries sustained by Plaintiff, notwithstanding that Pontiac Pointe may also be liable for those injuries.