NO. COA13-911

NORTH CAROLINA COURT OF APPEALS

Filed: 15 July 2014

NORLINDA PHILBECK,
    Employee,
    Plaintiff

v.

UNIVERSITY OF MICHIGAN,
    Employer,

and

STAR INSURANCE COMPANY,
    Carrier,
    Defendants.

From The North Carolina
Industrial Commission
I.C. No. X60971

Appeal by defendants from opinion and award entered 25 April 2013 by the North Carolina Industrial Commission. Heard in the Court of Appeals 8 January 2014.

*Bobby L. Bollinger, Jr. for plaintiff-appellee.*

*Rudisill White & Kaplan, P.L.L.C., by John R. Blythe, for defendants-appellants.*

DAVIS, Judge.

University of Michigan and Star Insurance Company (collectively "Defendants") appeal from the Opinion and Award of the North Carolina Industrial Commission ("the Commission") awarding Norlinda Philbeck ("Plaintiff") workers' compensation

benefits. The primary issue before us is whether the Commission erred in concluding that Plaintiff's accident was due to an unexplained fall and, therefore, compensable. After careful review, we affirm the Commission's Opinion and Award.

**Factual Background**

Plaintiff is a 67-year-old woman who was employed at the time of her injury by the University of Michigan as a field interviewer in social sciences research. Plaintiff's job duties required her to travel from her home in North Carolina to various locations on the East Coast to interview potential participants for a research study. Plaintiff would travel to an assigned location and interview randomly selected individuals.

On 8 August 2011, Plaintiff was in Columbia, Maryland conducting interviews for the study. Plaintiff visited a small apartment complex and attempted to interview one of the residents. When she discovered that the resident was not eligible to participate in the study, Plaintiff began walking back to her vehicle. On the way to her vehicle, Plaintiff fell and fractured her left arm near her wrist. At the hearing before the deputy commissioner, Plaintiff testified: "I don't know why I fell. . . . I might have stumbled. I don't know what happened. . . . Seconds after I hit the ground I think that I – I was kind of dazed. I think I might have been on the ground a few seconds and then I looked at my arm and I could see that it

was knocked out of place.  It was deformed."

Plaintiff was transported to Laurel Regional Hospital for treatment, and medical personnel administered various tests in an effort to determine why she had fallen.  Plaintiff testified that the emergency room staff "didn't know why [she] fell" and "said there was no medical reason."  Medical records from the emergency room indicated that Plaintiff had suffered a fall, was unable to explain what caused her to fall, and had experienced a loss of consciousness.  Dr. Michael E. Carlos, one of her treating physicians at Laurel Regional Hospital, noted that "vasovagal mechanism" was the "most likely reason for the syncope [loss of consciousness]" and that the injury to Plaintiff's arm was a "left radioulnar fracture."

Dr. Neveen Habashi ("Dr. Habashi"), Plaintiff's primary care physician since 2006, reviewed Plaintiff's medical records from Laurel Regional Hospital and opined that Plaintiff's fall was caused by heat exhaustion.  Dr. Habashi was not, however, able to state with a reasonable degree of medical certainty that heat exhaustion was the cause of Plaintiff's fall.  Instead, Dr. Habashi noted that since Plaintiff had "no underlying medical problems that would predispose her" to falling and passing out, Plaintiff's fall was likely "environmentally related."  Dr. Habashi also acknowledged that at the time she concluded that Plaintiff's fall was probably heat related, she was not aware of

the note on Plaintiff's intake records from the hospital stating that Plaintiff "was not overheating."

When Plaintiff returned to North Carolina, she sought treatment for her left arm from Dr. Mark McGinnis ("Dr. McGinnis"), an orthopedic surgeon. Dr. McGinnis surgically repaired the fracture on 15 August 2011 using a dorsal plate and seven surgical screws. Plaintiff subsequently had numerous follow-up visits with Dr. McGinnis. Dr. McGinnis took Plaintiff out of work until 6 September 2011, at which time he released her to work with a one-pound lifting restriction for her left arm. On 18 October 2011, Dr. McGinnis placed Plaintiff on a left arm lifting restriction of no more than 20 pounds. On 12 December 2011, Dr. McGinnis concluded that Plaintiff had reached maximum medical improvement and released Plaintiff to work without restrictions.

Plaintiff filed a Form 18 seeking workers' compensation benefits in connection with her 8 August 2011 fall, and on 15 November 2011, Defendants denied Plaintiff's claim on the basis that the "alleged injuries were a result of [an] idiopathic condition." The matter was heard by Deputy Commissioner Phillip A. Holmes on 22 May 2012. Deputy Commissioner Holmes filed an opinion and award on 22 October 2012 concluding that Plaintiff's injury was "due to factors that were not job related" and denying her claim for workers' compensation benefits.

Plaintiff appealed, and the Full Commission heard the matter on 1 March 2013. In its Opinion and Award filed on 25 April 2013, the Commission, with one commissioner dissenting, reversed the deputy commissioner and awarded Plaintiff temporary total disability benefits. Defendants appealed to this Court.

**Analysis**

**I. Compensability of Plaintiff's Injury**

Our review of an opinion and award of the Industrial Commission is "limited to consideration of whether competent evidence supports the Commission's findings of fact and whether the findings support the Commission's conclusions of law." *Richardson v. Maxim Healthcare/Allegis Grp.*, 362 N.C. 657, 660, 669 S.E.2d 582, 584 (2008). When reviewing the Commission's findings of fact, this Court's "duty goes no further than to determine whether the record contains any evidence tending to support the finding[s]." *Id.* (citation and quotation marks omitted).

The findings of fact made by the Commission are conclusive on appeal if supported by competent evidence even if there is also evidence that would support a contrary finding. *Nale v. Ethan Allen*, 199 N.C. App. 511, 514, 682 S.E.2d 231, 234, *disc. review denied*, 363 N.C. 745, 688 S.E.2d 454 (2009). The Commission's conclusions of law, however, are reviewed *de novo. Gregory v. W.A. Brown & Sons*, 212 N.C. App. 287, 295, 713 S.E.2d

68, 74, *disc. review denied*, ___ N.C. ___, 719 S.E.2d 26 (2011). Evidence supporting the plaintiff's claim is to be viewed in the light most favorable to the plaintiff, and the plaintiff is entitled to the benefit of any reasonable inferences that may be drawn from the evidence. *Adams v. AVX Corp.*, 349 N.C. 676, 681, 509 S.E.2d 411, 414 (1998).

Under the Workers' Compensation Act, an injury is compensable if the claimant proves three elements: "(1) that the injury was caused by an accident; (2) that the injury was sustained in the course of the employment; and (3) that the injury arose out of the employment." *Hedges v. Wake Cty. Pub. Sch. Sys.*, 206 N.C. App. 732, 734, 699 S.E.2d 124, 126 (2010) (citation and quotation marks omitted), *disc. review denied*, ___ N.C. ___, 705 S.E.2d 746 (2011). Here, Defendants acknowledge that Plaintiff's injury was (1) caused by an accident; and (2) sustained in the course of her employment. However, the Commission erred in awarding compensation, they argue, because the injury did not arise out of Plaintiff's employment. Specifically, they contend that Plaintiff fell because she fainted and, as such, her injury could not be deemed compensable under the doctrine of "unexplained falls."

In a workers' compensation case, if the cause or origin of a fall is unknown or undisclosed by the evidence, "we apply case law unique to unexplained fall cases. When a fall is

unexplained, and the Commission has made no finding that any force or condition independent of the employment caused the fall, then an inference arises that the fall arose out of the employment." *Id.* at 736, 699 S.E.2d at 127. This inference is permitted because when the cause of the fall is unexplained such that "[t]here is no finding that any force or condition independent of the employment caused or contributed to the accident[,] . . . the only active force involved [is] the employee's exertions in the performance of his duties." *Id.* (citation omitted).

Unexplained falls, however, are differentiated in our case law from falls associated with an idiopathic condition of the employee. "An idiopathic condition is one arising spontaneously from the mental or physical condition of the particular employee." *Hodges v. Equity Grp.*, 164 N.C. App. 339, 343, 596 S.E.2d 31, 35 (2004) (citation and quotation marks omitted). Unlike a fall with an unknown cause — where "an inference that the fall had its origin in the employment is permitted" — a fall connected to an idiopathic condition is not presumed to arise out of the employment. *Id.* at 344, 596 S.E.2d at 35 (citation and quotation marks omitted). Instead, the compensability of an injury caused by a fall associated with an idiopathic condition is determined as follows:

> (1) Where the injury is clearly attributable to an idiopathic condition of the employee, with no other factors intervening or operating to cause or contribute to the injury, no award should be made; (2) Where the injury is associated with any risk attributable to the employment, compensation should be allowed, even though the employee may have suffered from an idiopathic condition which precipitated or contributed to the injury.

*Hollar v. Montclair Furniture Co.*, 48 N.C. App. 489, 496, 269 S.E.2d 667, 672 (1980).

Defendants argue that Plaintiff's injury was not compensable because her fall (1) was a result of an idiopathic condition; and (2) was not associated with any risk attributable to her employment. In making this argument, Defendants rely primarily on *Hollar*. In *Hollar*, the plaintiff was working in an "extremely hot" and poorly ventilated work environment when she "suddenly, for an unexplained reason, felt as if she were passing out." *Id.* at 490, 269 S.E.2d at 669. The plaintiff fainted, fell to the floor, and struck her back. The Commission concluded that the plaintiff's injury was not compensable, and she appealed to this Court. *Id.* at 489, 269 S.E.2d at 668.

On appeal, we first noted that the plaintiff's fall "d[id] not come within the 'unexplained' category of falls" because "it [was] clear that [the] plaintiff fell because she fainted." *Id.* at 491, 269 S.E.2d at 669. Consequently, we determined that the compensability of the plaintiff's claim turned on why she

fainted — specifically, "whether [her] fainting was caused in any part by the conditions or circumstances of her employment." *Id.* at 497, 269 S.E.2d at 672. Because the record was devoid of any medical evidence as to why the plaintiff fainted, we remanded the matter to the Commission so that it could determine if the plaintiff's fainting was caused solely by an idiopathic condition or if it was in some way associated with the conditions of her employment. *Id.*

Defendants contend that this Court's decision in *Hollar* is controlling in the present case. As such, they argue that the Commission erred in applying the law of unexplained falls to Plaintiff's claim. We disagree.

Here, in determining that Plaintiff's injury arose from her employment and was therefore compensable, the Commission made the following pertinent findings of fact:

> 4. The fall on August 8, 2011, occurred while Plaintiff was walking in a parking lot after the conclusion of an attempted interview at an apartment complex. Plaintiff had been out of her car for approximately 10 to 15 minutes when she fell. Plaintiff does not recall what, if anything, caused her to fall. She did not recall any broken pavement or objects that caused her fall.
>
> 5. Immediately after the fall, Plaintiff was taken by an ambulance and admitted to Laurel Regional Hospital, whereupon she informed her medical providers that "she was not overheated" prior to the fall. She was unable to tell the Emergency Room staff why

she fell. The ambulance crew that transported Plaintiff interviewed an unnamed witness at the scene of the fall, who reported that she did not see any obvious reason to cause Plaintiff's fall.

6. While admitted to Laurel Regional Hospital, Dr. Michael E. Carlos, treated Plaintiff and noted that "vasovagal mechanism" was the "most likely reason for the syncope" and that dehydration "predisposed her to vasovagal syncope."

. . . .

8. On August 19, 2011, Plaintiff treated with her primary care physician, Dr. Naveen Habashi. Dr. Habashi opined that Plaintiff fainted and fell due to exposure to environmental elements, such as overheating. Dr. Habashi also opined that the facts related to Plaintiff's food and fluid intake prior to the fall were "consistent with a person potentially suffering from a dehydration condition," and that dehydration contributed to Plaintiff's fainting. However, Dr. Habashi was not able to testify to a reasonable degree of medical certainty that heat exhaustion, dehydration, or any other medical condition caused Plaintiff's fall. The Full Commission finds Dr. Habashi's testimony to be speculative with regard to the cause of Plaintiff's fall and assigns little weight to the opinions of Dr. Habashi. Dr. Habashi testified that the diagnosis made by Dr. Carlos of "vasovagal mechanism" is a non-specific diagnosis and by itself, it does not explain why Plaintiff fell.

. . . .

12. Plaintiff at various times has speculated that she may have fallen due to being overheated, dehydrated, or stressed, but Plaintiff consistently reported and testified that she actually does not know

what caused her to fall. Based upon the preponderance of the credible evidence of record, the Full Commission finds that there is insufficient evidence that Plaintiff was overheated due to her work environment, and there is insufficient evidence that Plaintiff fainted and fell due to heat exhaustion.

13. Plaintiff recalled the sight of almost hitting the ground and seeing her deformed wrist immediately after the fall while lying on the ground. Plaintiff testified that she may have been dehydrated on August 8, 2011, because she did not eat or drink any fluids between breakfast at 8:00 a.m. and the fall which occurred at 2:30 p.m., but there is insufficient medical evidence to support a finding that she fell due to dehydration.

14. The Full Commission finds that Plaintiff's fall was due to factors that were not disclosed by the evidence, and that her fall was unexplained. There was no competent medical opinion evidence presented to establish a medical or idiopathic reason for her fall.

Based on these findings, the Commission concluded as a matter of law that "Plaintiff's unexplained fall on August 8, 2011, constitute[d] a compensable injury by accident."

Contrary to Defendants' contention, *Hollar* is distinguishable from the present case. In *Hollar*, the fact that it was the plaintiff's fainting episode that caused her to fall and sustain an injury was uncontroverted. *Hollar*, 48 N.C. App. at 491, 269 S.E.2d at 669. Here, conversely, the Commission found that the medical evidence did *not* sufficiently establish the cause of Plaintiff's fall. Furthermore, the Commission

declined to make a finding that Plaintiff did, in fact, faint. We believe that based on the conflicting evidence in the record, the absence of such a finding was permissible.

Plaintiff stated on several occasions that she does not know why she fell. While at various times she speculated that she could have been overheated, dehydrated, or stressed at the time she fell, she provided no consistent explanation of the reason for her fall. The medical evidence suggests that Plaintiff suffered a loss of consciousness at some point but fails to provide clarity as to whether Plaintiff fell because she fainted. The Commission determined that the testimony offered by Dr. Habashi regarding the possible cause of Plaintiff's fall was speculative and assigned that testimony little weight. The Commission therefore concluded that there was insufficient credible evidence that Plaintiff fell due to heat exhaustion or dehydration.

It is well established that the Commission "is the sole judge of the credibility of the witnesses and the weight to be given their testimony." *Deese v. Champion Int'l Corp.*, 352 N.C. 109, 115, 530 S.E.2d 549, 552 (2000) (citation and quotation marks omitted). As such, its determinations regarding the credibility of witnesses or the weight certain evidence is to be accorded are not reviewable on appeal. *See Seay v. Wal-Mart Stores, Inc.*, 180 N.C. App. 432, 434, 637 S.E.2d 299, 301 (2006)

("This Court may not weigh the evidence or make determinations regarding the credibility of the witnesses.").

The Commission's findings that Plaintiff "does not know what caused her to fall" and "recalled the sight of almost hitting the ground" are supported by competent record evidence. Furthermore, these findings were not challenged by Defendants on appeal and are thus binding on this Court. *See Allred v. Exceptional Landscapes, Inc.*, ___ N.C. App. ___, ___, 743 S.E.2d 48, 51 (2013) ("Unchallenged findings of fact are presumed to be supported by competent evidence and are binding on appeal."). The Commission's findings as to the appropriate weight and consideration to be accorded to the medical evidence regarding the various theories of why Plaintiff might have fallen are within its discretion as the trier of fact, and this Court is "not at liberty to reweigh the evidence and to set aside the findings of the Commission, simply because other inferences could have been drawn and different conclusions might have been reached." *Hill v. Hanes Corp.*, 319 N.C. 167, 172, 353 S.E.2d 392, 395 (1987) (citation and quotation marks omitted).

Once the Commission determined that the evidence suggesting Plaintiff's fall occurred because of heat exhaustion or dehydration was speculative and entitled to little to no weight, there was no remaining evidence regarding the cause or origin of her fall. Consequently, we cannot conclude that the Commission

erred in its ultimate determination that Plaintiff's fall was unexplained and "due to factors that were not disclosed by the evidence." *See Sheenan v. Perry M. Alexander Constr. Co.*, 150 N.C. App. 506, 514, 563 S.E.2d 300, 305 (2002) (explaining that Commission is sole judge of weight and credibility of evidence and, as such, may accord less weight to testimony of medical expert if it determines that expert's opinions are based on inaccurate account of circumstances surrounding injury).

Thus, the Commission's findings that (1) Plaintiff does not know why she fell; and (2) the medical theories explaining the various possible causes of her fall were speculative and unsupported by sufficient evidence, support its legal conclusion that Plaintiff's fall was unexplained. *See Slizewski v. Int'l Seafood, Inc.*, 46 N.C. App. 228, 232, 264 S.E.2d 810, 813 (1980) (holding that workers' compensation claim was compensable where plaintiff could not recall why he fell and "[t]he evidence, or lack thereof, on the cause of the fall is sufficient to sustain the finding that the cause of the fall was unknown"). As such, we affirm the Commission's determination that Plaintiff's injury was compensable.

**II. Temporary Total Disability Benefits**

Defendants next assert that the Commission erred in awarding Plaintiff temporary total disability benefits beyond 12 December 2011, the date Plaintiff was released to return to work

without any permanent restrictions. Defendants argue that as of
that date she could no longer establish that her injury was
affecting her ability to earn her pre-injury wage and that, for
this reason, an award of temporary total disability benefits was
improper. We disagree.

"The term 'disability' means incapacity because of injury
to earn the wages which the employee was receiving at the time
of injury in the same or any other employment." N.C. Gen. Stat.
§ 97-2(9) (2013). Accordingly, to support a conclusion of
disability, the Commission must find

> (1) that plaintiff was incapable after
> his injury of earning the same wages he
> had earned before his injury in the
> same employment, (2) that plaintiff was
> incapable after his injury of earning
> the same wages he had earned before his
> injury in any other employment, and (3)
> that this individual's incapacity to
> earn was caused by plaintiff's injury.

*Hilliard v. Apex Cabinet Co.*, 305 N.C. 593, 595, 290 S.E.2d 682,
683 (1982). A claimant may prove the first two elements of
disability through several methods, including

> (1) the production of medical evidence
> that he is physically or mentally, as a
> consequence of the work related injury,
> incapable of work in any employment;
> (2) the production of evidence that he
> is capable of some work, but that he
> has, after a reasonable effort on his
> part, been unsuccessful in his effort
> to obtain employment; (3) the
> production of evidence that he is
> capable of some work but that it would

be futile because of preexisting conditions, i.e., age, inexperience, lack of education, to seek other employment; or (4) the production of evidence that he has obtained other employment at a wage less than that earned prior to the injury.

*Russell v. Lowes Prod. Distrib'n*, 108 N.C. App. 762, 765, 425 S.E.2d 454, 457 (1993) (internal citations omitted); *see Medlin v. Weaver Cooke Constr., LLC*, ___ N.C. ___, ___ S.E.2d ___, slip op. at 12-13 (No. 411A13) (filed Jun. 12, 2014) (explaining that plaintiff "may prove the first two elements through any of the four methods articulated in *Russell*, but these methods are neither statutory nor exhaustive"). "In addition, a claimant must also satisfy the third element, as articulated in *Hilliard*, by proving that his inability to obtain equally well-paying work is because of his work-related injury." *Medlin*, ___ N.C. ___, ___ S.E.2d ___, slip op. at 13.

"The absence of medical proof of total disability . . . does not preclude a finding of disability under one of the other three *Russell* tests." *Britt v. Gator Wood, Inc.*, 185 N.C. App. 677, 684, 648 S.E.2d 917, 922 (2007) (citation, quotation marks, and brackets omitted) (concluding that plaintiff could still be disabled under second or third prong of *Russell* test despite being released to work without restrictions). Here, citing *Hilliard*, the Commission found Plaintiff had proved that — as a result of her injury and despite a reasonable effort on her part

— she was unable to obtain suitable employment within her restrictions. Specifically, the Commission found that once Plaintiff was released to return to work, the University of Michigan did not have a job available for her and that Plaintiff "engaged in an unsuccessful, reasonable job search after being released to work with restrictions, but received no job offers." The Commission further found that Plaintiff's reasonable job search continued until 2 February 2012, when she refused suitable employment offered to her by the University of Michigan. As such, the Commission concluded that Plaintiff "suffered a loss in wage earning capacity as a result of her compensable injury . . . through February 2, 2012" but "has failed to prove any loss of wage earning capacity as a result of her compensable August 8, 2011 injury after February 2, 2012."

These findings are supported by Plaintiff's testimony regarding both her job search and her ongoing experience with pain and range-of-motion limitations after being released to work. *See Davis v. Hospice & Palliative Care of Winston-Salem*, 202 N.C. App. 660, 670, 692 S.E.2d 631, 638 (2010) ("In addition to medical testimony, an employee's own testimony that he is in pain may be evidence of disability." (citation and quotation marks omitted)). Nor do Defendants specifically challenge these findings. As such, they are binding on appeal. *See Strezinski v. City of Greensboro*, 187 N.C. App. 703, 706, 654 S.E.2d 263,

265 (2007) ("Findings of fact that are not challenged on appeal are binding on this Court."), *disc. review denied*, 362 N.C. 513, 668 S.E.2d 783 (2008). Because the Commission's findings of fact support its conclusion that Plaintiff established that she was unable to earn her pre-injury wage in the same or any other employment from 12 December 2011 to 2 February 2012 under the second prong of *Russell* and that Plaintiff's inability to earn her pre-injury wage was caused by her injury, we overrule Defendants' argument and affirm the Commission's award of temporary total disability benefits to Plaintiff.

## Conclusion

For the reasons stated above, we affirm the Commission's Opinion and Award.

AFFIRMED.

Judges STEELMAN and STEPHENS concur.