DAVIS, Judge.
 

 *433
 
 In this appeal, we revisit the issue of when an employee's injury is deemed to have arisen out of his employment under the North Carolina Workers' Compensation Act. Larry
 
 *262
 
 Brooks appeals from an opinion and award of the North Carolina Industrial Commission denying his claim for workers' compensation benefits. Because we conclude that Brooks' injury occurred solely as a result of his own idiopathic condition rather than due to conduct traceable to his employer, we affirm.
 

 Factual and Procedural Background
 

 In October 2015, Brooks was employed by the City of Winston-Salem (the "City") as a Senior Crew Coordinator in the Utilities Department. He supervised a team of four employees who were performing water and sewer line repairs throughout Winston-Salem. The City allowed Brooks
 
 *434
 
 and the other employees on his team to take two 15-minute breaks and one 30-minute lunch break each day. As the supervisor of the group, Brooks was "responsible for deciding whether and when breaks would be taken, and [was] responsible for the crew during breaks."
 

 On 22 October 2015, Brooks was with his crew working at a jobsite. At some point during the day, Brooks and the other employees decided to take a lunch break at a nearby Sheetz gas station. Brooks ate his lunch in the City's truck while the other employees sat at a table outside the gas station. After he finished eating his meal, Brooks briefly joined the group at the table and then entered the gas station for the purpose of purchasing cigarettes.
 

 Inside the gas station, Brooks decided to buy an e-cigarette, a type of cigarette he had never previously smoked. He returned to the City's truck after making the purchase and began smoking the e-cigarette while sitting inside the vehicle. At all relevant times, the City maintained a "[t]obacco [f]ree" policy, which provided that "[s]moking cigarettes or e-cigarettes inside City vehicles or on City property [wa]s prohibited...."
 

 As Brooks "ignited and inhaled the e-cigarette," he began coughing "uncontrollably." In order to get some fresh air, he opened the vehicle's door and stepped out of the truck while continuing to cough. Brooks then "passed out and fell to the ground." He landed on the cement curb, causing injury to his right hip, back, and head.
 

 Brooks was diagnosed by Dr. Dahari Brooks, a board-certified orthopedist, with "L3, L4 transverse process fractures." Due to these injuries, he was assigned light duty work restrictions, which prevented him from returning to work in his prior position.
 

 The City filed a Form 19 (Employer's Report of Employee's Injury) on 29 October 2015 and a Form 61 (Denial of Workers' Compensation Claim) on 19 November 2015. On 28 December 2015, Brooks filed a Form 18 (Notice of Accident), alleging that "[w]hen [he] stepped out of his truck he passed out (from e-cig) causing him to fall to the ground injuring his back."
 

 On 13 July 2016, a hearing was held before Deputy Commissioner Michael T. Silver. Brooks and Julie Carter, a risk manager working for the City, each provided testimony. Depositions were later taken of Dr. Brooks and Phillip Kelley, a physician's assistant who had treated Brooks following his injury.
 

 On 21 November 2016, the deputy commissioner issued an opinion and award determining that "[Brooks'] injuries were not the result of an
 
 *435
 
 injury by accident arising out of and in the course of employment...." Brooks appealed to the Full Commission.
 

 On 19 July 2017, the Full Commission issued an opinion and award affirming the deputy commissioner's decision and denying Brooks' claim for benefits. On 31 July 2017, Brooks filed a timely notice of appeal.
 

 Analysis
 

 Appellate review of an opinion and award of the Industrial Commission is typically "limited to consideration of whether competent evidence supports the Commission's findings of fact and whether the findings support the Commission's conclusions of law."
 
 Philbeck v. Univ. of Mich.
 
 ,
 
 235 N.C. App. 124
 
 , 127,
 
 761 S.E.2d 668
 
 , 671 (2014) (citation and quotation marks omitted). "The findings of fact made by the Commission are conclusive on appeal if supported by competent evidence even if there is also evidence that would support a contrary finding. The Commission's conclusions of law, however, are reviewed
 
 de novo
 
 ."
 

 *263
 

 Morgan v. Morgan Motor Co. of Albemarle
 
 ,
 
 231 N.C. App. 377
 
 , 380,
 
 752 S.E.2d 677
 
 , 680 (2013) (internal citations omitted),
 
 aff'd per curiam
 
 ,
 
 368 N.C. 69
 
 ,
 
 772 S.E.2d 238
 
 (2015).
 

 In its opinion and award in the present case, the Commission made the following pertinent findings of fact:
 

 1. On October 22, 2015, [Brooks] was employed by [the City] as a Senior Crew Coordinator in the Utilities Department. In that capacity, [Brooks] was a working supervisor over a crew of five, including himself, which performed water and sewer line repairs throughout the city.
 

 2. [Brooks'] work day started at 7:30 a.m. and was scheduled to end at 4:00 p.m., although he ''worked over a lot." [Brooks] and his crew were entitled to take two 15-minute breaks and one 30-minute lunch break each day. While it is unclear from the record whether these were paid or unpaid breaks, [Brooks] was, as the supervisor, responsible for deciding whether and when breaks would be taken, and responsible for the crew during breaks.
 

 3. On October 22, 2015, [Brooks] reported to work at 7:30 a.m., spoke to his supervisor to get his daily assignment, and then left out at approximately 8:00 a.m. with his crew in one of [the City]'s trucks to travel to that day's job site. Later that day, [Brooks] and his crew
 
 *436
 
 decided to take their lunch break at a Sheetz gas station which was located in close proximity to where they were working. [Brooks] ate his lunch in the truck, while his co-workers sat at a table outside the gas station. [Brooks] testified that they probably took more than 30 minutes for lunch, but they had not taken their 15-minute break that morning. [Brooks] finished eating his meal in the truck, joined his crew briefly, and then went into the gas station to purchase cigarettes. [Brooks] purchased an electronic cigarette (or e-cigarette) which he usually does not smoke. [Brooks] then walked back to [the City]'s truck, got inside, and began to smoke the e-cigarette. Smoking cigarettes or e-cigarettes inside City vehicles or on City property is prohibited by [the City]'s Tobacco Free Policy. When [Brooks] ignited and inhaled the e-cigarette, "it just cut off [his ]wind," and he began coughing uncontrollably. "Out of instinct," he opened the door and stepped out of the truck to get some air, all the while continuing to cough. After he had stepped out of the truck and while he was standing on the ground, coughing uncontrollably, [Brooks] passed out and fell to the ground. [Brooks] did not fall from the truck onto the ground.
 

 4. EMS was called to the scene and [Brooks'] vital signs were taken. According to EMS records, [Brooks] had a blood pressure of 194/120 and a blood sugar level of 312, both of which are extremely elevated readings.
 

 5. [Brooks] declined EMS transport to the emergency room and, instead, a co-worker took him to Novant Health Urgent Care & Occupational Medicine, where he was seen by Phillip Kelley, P.A. for injury to his right hip, back and head. [Brooks] informed Mr. Kelley that he had passed out after smoking an e-cigarette. [Brooks'] blood pressure remained elevated at 182/112, which Mr. Kelley testified is "very, very high" and constitutes "grade three hypertension," the highest grade there is. [Brooks] also informed Mr. Kelley that he was a known diabetic, but that he had been out of his medication since April. Mr. Kelley advised [Brooks] that he should be seen at the emergency room for further work-up regarding his syncope and extremely elevated blood pressure and blood sugar readings. [Brooks] refused,
 
 *437
 
 telling Mr. Kelley that he thought he had been off his diabetes medication for too long and that he would be ok once he started taking them again. Mr. Kelley renewed [Brooks'] diabetes medication and discharged him against medical advice with the following diagnoses: "syncope, unspecified syncope type; contusion, back, right, initial encounter; diabetes type 2, uncontrolled; acute post-traumatic headache, not intractable; shortness of breath; glucosuria; elevated blood pressure reading without diagnosis of hypertension."
 

 6. On October 22, 2015, [Brooks] completed a City of Winston-Salem Accident/Incident Report in which he described the accident as follows: "I developed a
 
 *264
 
 cough so hard I pass (sic) out standing. Free fell backwards onto a curb hurting backside back and head. More so my back cause it landed on curb." In his answers to interrogatories, [Brooks] described his injury as follows: "While sitting in the truck smoking an E-cig I started to choke. I got out to get air but I was coughing so much I passed out. I fell backwards on the cement curb causing my lower back and head to strike the ground."
 

 7. On December 28, 2015, after [the City] had denied [Brooks'] claim, [Brooks] filed a Form 18
 
 Notice of Accident to Employer and Claim of Employee, Representative, or Dependent
 
 in which he described the accident as follows: "When Employee stepped out of his truck he passed out (from e-cig) causing him to fall to the ground injuring his back."
 

 8. [Brooks] was diagnosed with L3, L4 transverse process fractures and came under the care of Dr. Dahari Brooks, a board-certified orthopedist, who assigned light duty work restrictions which preclude [Brooks] from returning to work in the position he was performing on the date of the injury. As of the date of the hearing before the Deputy Commissioner, [Brooks] remained out of work but still employed by [the City].
 

 9. Extremely elevated blood sugar levels and blood pressure readings, such as those exhibited by [Brooks] at the time of his injury, can cause someone to pass out. In addition, when someone coughs so much that they
 
 *438
 
 become light-headed, they can pass out from a vasovagal response. Dr. Brooks testified that he thought it was a combination of these three things, and that "they probably all contributed to it."
 

 10. [Brooks'] fall on October 22, 2015 was an unexpected and unforeseen occurrence. However, based upon a preponderance of the evidence in view of the entire record, the Full Commission finds that [Brooks'] fall on October 22, 2015 was caused by idiopathic conditions, to wit: extremely elevated blood pressure and blood sugar levels and vasovagal response triggered by uncontrolled coughing, and that no risk attributable to his employment combined with the idiopathic conditions to cause [Brooks'] accident. [Brooks] did not fall from a height or hit his head on a piece of work equipment. There is no evidence that [Brooks'] working conditions contributed to his fall and injury. Moreover, there is nothing in the record to suggest that [Brooks] would not have fallen because of his idiopathic conditions had he been standing in his back yard or leaving a convenience store on the weekend. Therefore, while [Brooks'] accident occurred in the course of his employment, it did not arise out of his employment.
 

 Based on these findings of fact, the Commission concluded that "because no risk or hazard incident to [Brooks'] employment duties combined with his idiopathic conditions to contribute to his injuries, his accident did not arise out of his employment and is therefore not compensable."
 

 Brooks does not challenge the portions of the Commission's findings explaining how the 22 October 2015 accident occurred. Therefore, these findings are binding on appeal.
 
 See
 

 Allred v. Exceptional Landscapes, Inc.
 
 ,
 
 227 N.C. App. 229
 
 , 232,
 
 743 S.E.2d 48
 
 , 51 (2013) ("Unchallenged findings of fact are presumed to be supported by competent evidence and are binding on appeal." (citation omitted) ).
 

 Brooks' primary argument is that the Commission erred as a matter of law by failing to conclude that his fall arose out of his employment. Under the Workers' Compensation Act, an injury is compensable if the claimant proves three elements: "(1) that the injury was caused by an accident; (2) that the injury was sustained in the course of the employment; and (3) that the injury arose out of the employment."
 

 *439
 

 Hedges v. Wake Cty. Pub. Sch. Sys.
 
 ,
 
 206 N.C. App. 732
 
 , 734,
 
 699 S.E.2d 124
 
 , 126 (2010) (citation and quotation marks omitted),
 
 disc. review denied
 
 ,
 
 365 N.C. 77
 
 ,
 
 705 S.E.2d 746
 
 (2011).
 

 Our Supreme Court has held that "[a]n injury is said to arise out of the employment when it occurs in the course of the employment and is a natural and probable consequence or incident of it, so that there is some causal relation between the accident
 
 *265
 
 and the performance of some service of the employment."
 
 Taylor v. Twin City Club
 
 ,
 
 260 N.C. 435
 
 , 438,
 
 132 S.E.2d 865
 
 , 868 (1963) (citation omitted). "Whether an injury arose out of and in the course of employment is a mixed question of law and fact, and where there is evidence to support the Commissioner's findings in this regard, we are bound by those findings."
 
 Roberts v. Burlington Indus., Inc.
 
 ,
 
 321 N.C. 350
 
 , 354,
 
 364 S.E.2d 417
 
 , 420 (1988) (citation and quotation marks omitted).
 

 "An idiopathic condition is one arising spontaneously from the mental or physical condition of the particular employee."
 
 Philbeck
 
 ,
 
 235 N.C. App. at 128
 
 ,
 
 761 S.E.2d at 672
 
 . We have consistently held that "[w]hen the employee's idiopathic condition is the sole cause of the injury, the injury does not arise out of the employment."
 
 Mills v. City of New Bern
 
 ,
 
 122 N.C. App. 283
 
 , 285,
 
 468 S.E.2d 587
 
 , 589 (1996) (citation omitted). However, "[t]he injury does arise out of the employment if the idiopathic condition of the employee combines with risks attributable to the employment to cause the injury."
 
 Billings v. Gen. Parts, Inc.
 
 ,
 
 187 N.C. App. 580
 
 , 586,
 
 654 S.E.2d 254
 
 , 259 (2007) (citation, quotation marks, brackets, and emphasis omitted),
 
 disc. review denied
 
 ,
 
 362 N.C. 233
 
 ,
 
 659 S.E.2d 435
 
 (2008).
 

 Brooks argues that this case is similar to those in which our courts have upheld an award of workers' compensation benefits to an employee who suffers an injury from an idiopathic condition while operating a vehicle for work-related purposes.
 
 See, e.g.
 
 ,
 
 Allred v. Allred-Gardner, Inc.
 
 ,
 
 253 N.C. 554
 
 , 556,
 
 117 S.E.2d 476
 
 , 478 (1960) (plaintiff blacked out and crashed into pole while driving vehicle to run errand for employer);
 
 Billings
 
 ,
 
 187 N.C. App. at 587
 
 ,
 
 654 S.E.2d at 259
 
 (plaintiff suffered "syncopal episode (i.e., blackout) while operating defendant-employer's truck, after which time the truck ran off the road, hit a light pole, and flipped over");
 
 Chavis v. TLC Home Health Care
 
 ,
 
 172 N.C. App. 366
 
 , 373,
 
 616 S.E.2d 403
 
 , 410 (2005) (plaintiff was traveling for job-related purposes and blacked out while driving vehicle),
 
 appeal dismissed
 
 ,
 
 360 N.C. 288
 
 ,
 
 627 S.E.2d 464
 
 (2006). These cases, however, are materially distinguishable on their facts from the present case.
 

 *440
 
 Where the relationship between a plaintiff's employment and his injury is too attenuated, our Supreme Court has held that the injury does not arise out of the plaintiff's employment. We find particularly instructive our Supreme Court's decision in
 
 Vause v. Vause Farm Equipment Company
 
 ,
 
 233 N.C. 88
 
 ,
 
 63 S.E.2d 173
 
 (1951). In
 
 Vause
 
 , the plaintiff had previously suffered from epileptic convulsions for many years and could "feel one of these seizures when it was coming on."
 
 Id.
 
 at 93,
 
 63 S.E.2d at 177
 
 . The plaintiff realized he was about to have a seizure "while driving a pick-up truck in the course of his employment to the home of a customer for the purpose of servicing a tractor...."
 
 Id.
 
 at 89,
 
 63 S.E.2d at 173
 
 .
 

 Upon feeling "faint and ill[,]" the plaintiff "pulled the truck over to the side of the road and parked, then opened the door on his left, threw his feet outside, and lay down on the seat of the truck with his head on the side opposite from the steering wheel, and immediately suffered an epileptic seizure that caused him to lose consciousness."
 

 Id.
 

 When he regained consciousness, the plaintiff was "hanging to the steering wheel with his hands; his body was outside of the truck with one foot on the running board and the other dangling [to the] side of it."
 
 Id.
 
 at 89-90,
 
 63 S.E.2d at 173
 
 . The plaintiff suffered various injuries as a result of the incident.
 
 Id.
 
 at 90,
 
 63 S.E.2d at 173
 
 .
 

 The plaintiff filed a workers' compensation claim, and the Commission determined that his injury had arisen out of his employment.
 

 Id.
 

 On appeal, our Supreme Court reversed the Commission's award of benefits, ruling that the injury was not caused by the plaintiff's employment.
 
 Id.
 
 at 98,
 
 63 S.E.2d at 181
 
 . In so holding, the Court stated as follows:
 

 Conceding that, as found by the Commission, the plaintiff in being required to drive the truck to perform his work, was (thereby) subjected to a peculiar hazard, even so the evidence here discloses no causal connection between the operation of the truck and the injury. The evidence here shows that the plaintiff felt the epileptic seizure coming on. He pulled the truck off the
 
 *266
 
 road, parked it, and lay down on the seat in a place of apparent safety, with all of the ordinary dangers of his employment suspended and in repose. We perceive in this evidence no showing that any hazard of the employment contributed in any degree to the unfortunate occurrence. The evidence affirmatively shows that it was solely the force of his unfortunate seizure that moved him from his position of safety to his injury. The
 
 *441
 
 cause of the fall is not in doubt. It is not subject to dual inferences. All of the evidence shows that the cause of the plaintiff's fall was independent of, unrelated to, and apart from the employment.... The chain of cause and effect clearly leads in unbroken sequence from the plaintiff's unfortunate physical seizure, brought on by a pre-existing infirmity, to his injury. The award below can be sustained only by disregarding the epileptic seizure as a cause of the injury and by starting in the chain of causation at the point of the fall. To say that the injury was caused by the fall, and thus eliminate from consideration the epileptic seizure as the cause of the fall is not in accord with the fundamental principles by which the law fixes and determines the cause and effect of events. Any such process of reasoning, in effect, would strike out of the Workmen's Compensation Act the provision which requires that an injury to be compensable shall arise out of the employment.
 

 Id.
 
 at 98,
 
 63 S.E.2d at 180-81
 
 (internal citation and quotation marks omitted).
 

 We are further guided by the Supreme Court's decision in
 
 Bartlett v. Duke University
 
 ,
 
 284 N.C. 230
 
 ,
 
 200 S.E.2d 193
 
 (1973), which involved a decedent who had been employed by Duke University as a construction administrator and was traveling to Washington, D.C. in order to recruit a maintenance engineer.
 

 Id.
 

 at 231
 
 ,
 
 200 S.E.2d at 194
 
 . During his trip, he had dinner with a friend at a restaurant in a nearby town.
 

 Id.
 

 While eating shish kebab at the restaurant, the decedent "aspirated a chunk of meat and immediately became unconscious."
 

 Id.
 

 He never regained consciousness and died two months later.
 

 Id.
 

 at 231
 
 ,
 
 200 S.E.2d at 194
 
 .
 

 The decedent's widow filed for workers' compensation benefits. The Commission awarded benefits, concluding that the decedent's death "resulted from an injury by accident arising out of and in the course of his employment...."
 

 Id.
 

 Our Supreme Court reversed the award, holding that the death did not arise out of the employment because "[t]here [wa]s no causal relationship between choking on a piece of steak and the employment of decedent, even though he was eating while he was on the job."
 

 Id.
 

 at 235
 
 ,
 
 200 S.E.2d at 196
 
 (citation and quotation marks omitted). The Court held that
 

 the conditions of his employment had no bearing on the fact he choked to death. His injury resulted entirely from an unintentional but self-inflicted mishap. There is no
 
 *442
 
 evidence whatever that the choking was induced by any business activity.
 

 Id.
 

 at 235
 
 ,
 
 200 S.E.2d at 196
 
 (citations and quotation marks omitted).
 

 These same principles apply to the present case. Brooks was on his lunch break at a gas station. After parking his employer's truck, he ate his meal in the truck and then went into the gas station to purchase cigarettes. When he returned to the truck, he inhaled an e-cigarette, began coughing, stepped out of his truck, passed out, and fell on the cement curb. While admittedly Brooks would not have been at the gas station but for his job, his fall was not traceable to the conditions of his employment. Rather, Brooks' own actions and his idiopathic condition were the sole forces causing his injuries. He chose to purchase an e-cigarette, return to the truck, smoke the cigarette, and ultimately step outside of the truck to get fresh air. None of these actions were required by his employment or served to benefit his employer.
 
 [1]
 
 Thus, no hazard related to Brooks' employment with the City contributed to his injury.
 
 See
 

 Vause
 
 ,
 
 233 N.C. at 98
 
 ,
 
 63 S.E.2d at 180
 
 .
 

 *267
 
 In his final argument, Brooks contends that the Commission should have employed the "unexplained fall" doctrine based on these facts. "Unexplained falls ... are differentiated in our case law from falls associated with an idiopathic condition of the employee."
 
 Philbeck
 
 ,
 
 235 N.C. App. at 128
 
 ,
 
 761 S.E.2d at 672
 
 . Brooks contends that it is unknown whether his injury was actually caused by his idiopathic condition or, alternatively, whether it was attributable to his employment.
 
 See
 
 id.
 

 ("When a fall is unexplained, and the Commission has made no finding that any force or condition independent of the employment caused the fall, then an inference arises that the fall arose out of the employment." (citation and quotation marks omitted) ). Here, however, the Commission
 
 did
 
 expressly find that Brooks' idiopathic condition was the sole cause of his fall. Thus, the "unexplained fall" doctrine is inapplicable on these facts.
 
 See
 
 id.
 

 ("Unlike a fall with an unknown cause-where an inference that the fall had its origin in the employment is permitted-a fall connected to an idiopathic condition is not presumed to arise out of the employment." (citation and quotation marks omitted) ).
 

 Because Brooks' fall resulted from his own idiopathic condition and was not caused by a hazard of his employment, the Commission
 
 *443
 
 properly concluded that the injury did not arise out of his employment. Thus, his injury was not compensable under the Workers' Compensation Act.
 

 Conclusion
 

 For the reasons stated above, we affirm the Commission's 19 July 2017 opinion and award.
 

 AFFIRMED.
 

 Judges INMAN and MURPHY concur.
 

 [1]
 

 Indeed, as noted earlier, the City's policies prohibited its employees from smoking in a City vehicle.